RYAN, Circuit Judge
(dissenting).
I must respectfully dissent from the conclusion that the defendant’s consent to search his home was not voluntarily given.
The majority opinion does not persuasively demonstrate that the district court’s finding of voluntariness was clearly erroneous. It demonstrates, at best, the majority’s disageement with the district court’s conclusions about the credibility of several of the witnesses who testified at the hearing on the motion to suppress.
I agree that the seminal case of Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), fixes the standard for determining the voluntariness of consent to a warrantless search. There, the Court stated:
The traditional definition of voluntariness we accept today has always taken into account evidence of minimal schooling, low intelligence, and the lack of any effective warnings to a person of his rights; and the voluntariness of any statement taken under those conditions has been scrutinized to determine whether it was in fact voluntarily given.
Schneckloth, 412 U.S. at 248, 93 S.Ct. at 2058.
Faithful to that guidance in Schneckloth, the majority focuses upon three factors in concluding that “the district court erred in determining that Jones’ consent was voluntary and uncounseled.” Those three factors are:
1. The investigating officers’ failure to give Jones the Miranda warnings;
2. The “coercive” nature of the officers’ investigative tactics; and
3. Jones’ low intelligence and lack of schooling.
Before examining some of the record evidence relating to those three factors, I must respectfully take issue with the court’s observation at mid-opinion that “the district court ignored factors under the Schneckloth guidelines which strongly suggest that Jones’ consent was involuntary.” My examination of the record, and particularly of the trial court’s bench opinion denying the motion to suppress the gun as evidence, fails to reveal to me any basis at all for the court’s conclusion that the trial court “ignored factors under the Schneckloth guidelines.” Concededly, the trial court’s bench opinion does not include any specific reference to the Schneckloth case by name. It reveals very clearly, however, the court’s thorough understanding of the standards announced in Schneck-loth; standards with which the very experienced trial judge is unquestionably familiar.
A careful look at the evidence relating to the three factors discussed by the majority reveals precisely why this court’s view of the facts should yield to the district court’s view, both of which turn entirely on the credibility of the witnesses who testified before the trial court.
The first factor addressed by the majority is the officers’ failure to give Jones any Miranda warnings. The court states:
At no time did the police officers ever apprise Jones ... of his rights under Miranda or of his rights to refuse a search.
However, Officer Gonyea testified as follows:
I asked him [Jones] if he had a gun in the car with him. He said no. And the *363 other officer took a look in the car and said: “I can’t see anything.”
The other officer determined there wasn’t a gun in the car itself, in the passenger section of the car.
So Mr. Jones was standing around by the back left rear of the car, and I said to him, I said: “You know, you don’t have to, and I’m not going to force you, but could we look in the trunk of your car?”
He said: “Sure, no problem.”
I said: “You understand you don’t have to let us do it now?”
He said: “No, no problem.”
He walked over there, put the key in and opened the trunk up for us.
Officer Gonyea further testified that throughout the period at the scene of Jones’ initial stop, Jones “always seemed very cooperative.” While it is undisputed that the officer did not give Jones any Miranda warnings, Officer Gonyea’s testimony contradicts the inference that the failure to give Jones Miranda warnings was a matter of any significance in obtaining Jones’ consent to search the car. The testimony also contradicts the majority’s conclusion that the police chose not to apprise Jones of his right to refuse a search of his car. Although knowledge of a right to refuse is relevant to a determination that one’s consent was voluntarily given, it is not “the sine gua non of an effective consent to a search.” United States v. Mendenhall, 446 U.S. 544, 558-59, 100 S.Ct. 1870, 1879, 64 L.Ed.2d 497 (1980).
When Jones, his friend, and the officers arrived at Jones’ home, the officers did not repeat the advice that Jones did “not have to let” the officers conduct a search, this time, of Jones’ home. But Jones had already manifested a rather clear attitude of cooperation with the officers and a willingness to consent to the search at the time of his initial stop. As will be noted again hereafter, the trial court made specific findings of fact explaining precisely why it concluded that Jones voluntarily chose to cooperate with the police officers whether or not he was in a “custodial environment” and given Miranda warnings at the time his vehicle was stopped by the three police cars. Moreover, even if the situation at the time Jones’ car was stopped was indeed a “custodial environment,” the foregoing testimony by Officer Gonyea demonstrates that even though Miranda warnings had not been given to Jones, he was adequately informed of his rights under the fourth amendment to refuse to consent to the search of the vehicle. He unequivocally consented to the car search and subsequently volunteered that the gun was at his apartment.
The second point which the majority opinion addresses is that Jones’ consent was the product of a coercive police atmosphere. In my judgment, that conclusion is also unsupported by the record. The majority opinion notes that “Jones testified that he cooperated with the police because he believed he was under arrest from the time his car was stopped and blocked by police.” Jones testified that:
I was under arrest ... I considered I was under arrest anytime the police stopped you.
Jones also testified that:
They [the police] didn’t tell me I was under arrest. I thought I was because they stopped me.
Whether Jones was “under arrest” when his vehicle was boxed in by three police cars is not, of course, per se determinative of whether he consented to the subsequent search of his residence. It is at most a factor relevant, albeit remotely, to the vol-untariness of the consent later given.
After a careful review of the record on appeal, one is hard-pressed to find any substantial evidence of coercion. Jones, unaccompanied, drove his own car back to his home and, after arriving, volunteered to go in and got the gun himself. After the officers declined Jones’ offer to get the gun himself, Jones remained outside his home, alone. Even if Jones was physically unable to freely leave the scene at his home, he was still there upon his own suggestion and could, if he wished, have revoked his consent to permit the officers to *364 search the home at any time prior to surrendering the gun.
Finally, the court concludes that Jones’ low intelligence and negligible schooling contributed to the involuntariness of his consent. While a defendant’s intelligence is a relevant factor in determining whether his consent is freely given, Schneckloth, 412 U.S. at 248, 93 S.Ct. at 2058-59, this court should not be quick to ignore the distinction between a defendant’s general intelligence and formal schooling and his familiarity, rooted in experience, with police practices. Jones has had ample firsthand experience in confronting the police. He has one murder conviction and two felony convictions for delivery of marijuana, and was on parole at the time of his arrest in this case. He was, to say the least, “street wise.” The district court concluded as much:
I’m satisfied that he [Jones] was on the spot, he knew that — he had been seen with the gun, he knew that he was a convicted felon, he knew that they knew he was a convicted felon, and he was under some pressure, but the pressure was because of the trouble he was in, and not because of anything that the police did.
He decided that the best thing to do was to cooperate with the police and let them get the gun and hope that the issue would go away, because he knew he was in a pile of trouble.
(Emphasis added.)
The foregoing is not merely an idle observation by the trial court. It is a specific finding of fact, after a lengthy evidentiary hearing, that despite the presence of some arguable indicia of involuntariness, the actual consent to enter the house to find the gun was freely given for the reasons found by the district court. That finding, and those reasons, turn entirely upon the credibility of the witnesses who testified before the district court, particularly the credibility of the defendant Jones. It is a finding with which the majority opinion disagrees but it is not one that justifies the appellate conclusion that “the district court ignored factors under the Schneckloth guidelines.”
On appeal, this court generally defers to the district court’s credibility assessments unless clearly erroneous. See, e.g., United States v. Puglisi, 790 F.2d 240, 244 (2d Cir.1986), cert. denied, — U.S. -, 107 S.Ct. 106, 93 L.Ed.2d 55 (1986). The district court specifically found Jones’ version of the facts lacking in credibility. Further, voluntariness is “a question of fact to be determined from the totality of the circumstances.” Schneckloth, 412 U.S. at 227, 93 S.Ct. at 2048. The district court’s conclusion that Jones’ consent was voluntary, informed, and rational is “plausible in light of the record viewed in its entirety.” Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). “When there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.” Id. at 1512.
Accordingly, I would affirm.