**UNITED STATES of America, Appellee,**

v.

**Peter L. FRANCESCO, Defendant, Appellant.**

**No. 83–1414.**

United States Court of Appeals, First Circuit.

Argued Nov. 7, 1983.

Decided Jan. 20, 1984.

comes unnecessary.

Peter Francesco. They observed the defendant drive his car from his residence in Arlington, Massachusetts to the Hampton Toll Plaza in New Hampshire. The DEA officials arrested the defendant immediately upon entering a parking area in the toll plaza. A brown paper package was recovered from his car. Search warrants were obtained for the package and for the defendant's residence in Arlington. The package was found to contain approximately one kilogram of a white powdery substance identified as cocaine. The search of the house turned up various implements used in weighing and packaging cocaine for resale and a small amount of a substance identified as cocaine hydrochloride. The defendant was charged in a one count indictment with possession with intent to distribute a Schedule II controlled substance in violation of the Comprehensive Drug Abuse Prevention and Control Act of 1970, ("Drug Control Act" or "Act"), 21 U.S.C. § 841 (1982).

Prior to trial, the defendant filed motions to suppress evidence and for discovery of information regarding the confidential government informant(s) used in the case. The district court held an evidentiary hearing on the motions to suppress and denied the motions. The court also held a hearing *in camera* to question DEA agents regarding the informant(s) involved in the case. The court determined that disclosure of the identity of the informant(s) was not required.

The defendant was afforded a jury trial. The government's case consisted of testimony from several DEA agents and other law enforcement personnel, and two DEA chemists. After the government rested, the defendant moved for a judgment of acquittal alleging among other things that the government had failed to prove that the substances seized from him were Schedule II controlled substances as defined in the Drug Control Act. The motion was denied. The defense then called its witnesses, which included one Michael a/k/a Mickey Mar-

Myer J. Cohen, Boston, Mass., with whom Paul J. Redmond, and Rosemary K. Redmond, Lincoln, Mass., were on brief, for defendant, appellant.

Kevin E. Sharkey, Asst. U.S. Atty., Concord, N.H., with whom W. Stephen Thayer, III, U.S. Atty., Concord, N.H., was on brief, for appellee.

Before COFFIN, Circuit Judge, SWYGERT,* Senior Circuit Judge, and BREYER, Circuit Judge.

SWYGERT, Senior Circuit Judge.

On December 14, 1982 on the basis of an informant's tip, agents of the Drug Enforcement Administration ("DEA"), maintained surveillance on defendant-appellant

* Of the Seventh Circuit, sitting by designation.

rone, who asserted his fifth amendment privilege not to testify.

At the close of the evidence, the parties submitted requests for jury instructions. One of the defendant's proposed instructions concerned the government's burden of proving that the substances seized from him fell within the statutory definition of a Schedule II controlled substance. At this point, the government moved to reopen its case to call a third chemist to testify regarding the tests conducted on the seized substances by two DEA chemists who had testified previously. The court granted the government's request to reopen but refused on the basis of the hearsay prohibition to allow the chemist to testify regarding tests conducted by the other chemists.

The jury returned a guilty verdict. The defendant's motion for judgment notwithstanding the verdict was denied, and he was sentenced to a term of twelve years incarceration, fined $25,000.00, and placed under a special probation term of ten years. We affirm the conviction.

## I

The defendant's primary claim concerns what is known as the "cocaine isomer" defense or strategy.[1] According to this defense, substances exist, in theory at least, that may properly be called "cocaine" but are not controlled substances within the definition of the Drug Control Act.

The Act designates as a Schedule II controlled substance:

Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances . . . .

21 U.S.C. § 812(c), Schedule II(a)(4) (1982). The experts appear to agree that there are eight known isomers of cocaine. *See United-ed States v. Ross, supra,* at 617; *United States v. Kolenda, supra,* 697 F.2d at 150. There is some disagreement, however, as to the nature of these eight cocaine isomers.

The defendant's counsel explained to this court at oral argument, as we understand it, that although all eight isomers are derived from the coca leaf, only two of the isomers, L-cocaine and D-cocaine, are narcotic and come within the intended scope of the Drug Control Act. In *United States v. Orzechowski, supra,* however, the defense argued that D-cocaine was a synthetic substance rather than a derivative of the coca leaf and was not a controlled substance under the Act. A defense expert testified that D-cocaine and L-cocaine have different molecular compositions and "react differently with other chemical reagents and in living organisms." 547 F.2d at 981. *See also United States v. Bockius, supra,* 564 F.2d at 1195.

In *United States v. Kolenda, supra,* the defense argued that no isomers of cocaine are controlled substances under the Act. The court appeared to find that all compounds of cocaine are isomeric and that all cocaine isomers are Schedule II controlled substances. Admitting that the substance recovered from defendant was a cocaine isomer, the court stated, "the evidence shows that all forms of cocaine compound

---

1. Eight circuits have addressed some form of a cocaine isomer defense claim. *See United States v. Ross,* 719 F.2d 615 at 617–618 (2d Cir.1983); *United States v. Kolenda,* 697 F.2d 149, 149–50 (6th Cir.1983); *United States v. Fince,* 670 F.2d 1356, 1357–58 (4th Cir.), *cert. denied,* 456 U.S. 982, 102 S.Ct. 2254, 72 L.Ed.2d 860 (1982); *United States v. Posey,* 647 F.2d 1048, 1050–51 (10th Cir.1981); *United States v. Luschen,* 614 F.2d 1164, 1168–70 (8th Cir.), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980); *United States v. Bockius,* 564 F.2d 1193, 1194–95 (5th Cir.1977); *United States v. Hall,* 552 F.2d 273, 274–76 (9th Cir. 1977); *United States v. Orzechowski,* 547 F.2d 978, 980–83 (7th Cir.1976), *cert. denied,* 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977). *See also United States v. Haro-Espinosa,* 619 F.2d 789, 795 (9th Cir.1979); *United States v. Rosado-Fernandez,* 614 F.2d 50, 53–54 (5th Cir. 1980); *United States v. Ortiz,* 610 F.2d 280, 281–82 (5th Cir.), *cert. denied,* 445 U.S. 930, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980); *United States v. Umentum,* 547 F.2d 987, 992–93 (7th Cir.1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1677, 52 L.Ed.2d 376 (1977). Only the Second Circuit, however, has overturned a conviction on the basis of the defense. *United States v. Ross, supra,* at 618.

are isomers of each other .... There can be no doubt that the substance involved in the present case is derived from coca leaves and falls within the statutory definition." 697 F.2d at 150.

In *United States v. Ross, supra,* the Second Circuit offered, in our opinion, the most cogent analysis of the cocaine isomer theory, The court explained that only L-cocaine is a derivative of the coca leaf and that the seven other cocaine isomers are synthetic compounds that "are 'controlled' by the statute only if they are 'chemically equivalent or identical with' L-cocaine." At 618.

Whatever the basis for the isomer defense, we understand the gist of the defendant's argument in this case to be that the government failed to prove that the substances recovered from his car and his home were controlled substances as defined in the Drug Control Act. The government experts testified only that the substance recovered from the defendant's car was "cocaine" and that the substance recovered from his house was "cocaine hydrochloride." The term isomer was never mentioned. There was no testimony that the substances were derivatives of the coca leaf or a chemical equivalent thereof, and the experts did not even indicate what tests were conducted on the substances. The defendant argues that the trial court should have found this evidence insufficient as a matter of law to prove that he possessed a Schedule II controlled substance. The defendant further argues that the court's instruction to the jury, stating that cocaine, as a matter of law, is a Schedule II controlled substance, constituted reversible error. We find that, although the government's expert testimony on the nature of the substances recovered from the defendant was woefully scant, the testimony was sufficient to support the jury instruction and the defendant's ultimate conviction in this case.

▪ In accord with the other circuits, we find that the question of whether a cocaine compound is a derivative of the coca leaf or the chemical equivalent thereof as defined in the Drug Control Act is an issue of fact to be determined by the jury. *See United States v. Posey, supra,* 647 F.2d at 1053; *United States v. Bockius, supra,* 564 F.2d at 1194; *United States v. Hall, supra,* 552 F.2d at 275–76; *United States v. Umentum, supra,* 547 F.2d at 992–93. For the reasons provided below, we conclude that given the evidence presented by the government in this case, the defendant failed to raise a material issue of fact concerning the nature of the substances identified as cocaine and cocaine hydrochloride.

▪ The government experts testified that the substances seized from appellant were "cocaine." Cocaine, as the term is normally used, denotes an illicit drug that comes within the restrictions of the federal Drug Control Act. The defense in this case made no attempt to demonstrate that the term could denote some uncommon substance that is not a controlled substance under the Act. The defense did not cross-examine the government experts and presented no expert testimony of its own on the chemical composition of the substances seized from the defendant or on the various allegedly legal cocaine isomers. Although the government has the burden in a criminal case of proving every element of the offense charged, it has no burden of proving that a term used in its commonly understood sense has no other possible meaning— at least until the possibility of another meaning is raised by the defense. The defense did not raise that possibility in this case. *Cf. United States v. Ross, supra,* at 617 (cross-examination of government expert "raised serious questions of fact and credibility"); *United States v. Bockius, supra,* 564 F.2d at 1195 (defense "strategy was to show that the Government had not met its burden of proof ... by impeaching government testing procedures"); *United States v. Orzechowski, supra,* 547 F.2d at 980–83 (contradictions between testimony of government expert and that of defense expert left to resolution of trier of fact).

▪ The defendant's failure to introduce evidence in support of his isomer defense left the judge (whose instructions to the jury must be based on the evidence adduced

at trial) no choice but to instruct the jury that cocaine is a Schedule II controlled substance. The jury then had no alternative but to find that the substances identified as cocaine were illegal forms of cocaine under the Drug Control Act. The instruction to the jury was not erroneous and the jury was justified in finding the defendant guilty of possession of a Schedule II controlled substance.

## II

■ The other issues raised by the defendant are without merit. He contends that the trial court committed reversible error in refusing to compel the government to disclose the identity of the informant involved in the case. We find that error, if any, in failing to reveal the informant's identity was harmless. The defendant asserted throughout the proceedings in the trial court his belief that the informant was Michael "Mickey" Marrone. The trial judge confirmed the defendant's suspicions in a side-bar conference. VI Trial Transcript at 166–68. The defendant subpoenaed Marrone to appear as a witness at trial. Marrone appeared and asserted his fifth amendment privilege not to testify. The defendant neither challenged this assertion nor requested the court or the government to grant Marrone immunity. We do not see how confirmation by the government of the identity of the informant could have contributed to the defense at trial. *See United States v. Gonzalez,* 555 F.2d 308, 314 (2d Cir.1977) (failure to identify "informant *qua* informant" did not constitute prejudicial error where name and address of informant were otherwise furnished to defendants giving defendants opportunity to subpoena informant as a witness at trial); *cf. United States v. Pennick,* 500 F.2d 184, 187 (10th Cir.), *cert. denied,* 419 U.S. 1051, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974) (no prejudice to defendant where informer testified at trial, "rul[ing] out the possibility that the informer's testimony could somehow be helpful to [defendant]").

■ The defendant further contends that his sixth amendment right to confront op-posing witnesses was violated by his inability to cross-examine the government informant. The government is under no obligation to call an informant as a witness at trial, and a defendant has no right to confront an informant who provides no evidence at trial. *See Cooper v. California,* 386 U.S. 58, 62 n. 2, 87 S.Ct. 788, 791 n. 2, 17 L.Ed.2d 730 (1967); *United States v. Kabbaby,* 672 F.2d 857, 864 (11th Cir.1982).

■ The defendant alleges that the trial court abused its discretion in admitting evidence of his prior conviction for the sale of cocaine. It is settled that evidence of a prior conviction for a similar offense may be admitted to show knowledge or intent to commit the offense in question, subject of course to the general evidentiary rules on relevancy and prejudice, Fed.R.Evid. 402, 403. *See United States v. D'Alora,* 585 F.2d 16, 20 (1st Cir.1978); Fed.R.Evid. 404(b) & advisory committee note. While evidence of a prior conviction for a similar offense is always prejudicial, the prejudice is frequently outweighed by the relevancy of the evidence when a defendant's knowledge or intent is a contested issue in the case. *See United States v. Renteria,* 625 F.2d 1279, 1281–82 (5th Cir.1980); *United States v. Hopkinson,* 492 F.2d 1041, 1043 (1st Cir.), *cert. denied,* 417 U.S. 968, 94 S.Ct. 3171, 41 L.Ed.2d 1139 (1974). The defense in this case raised the issue of the defendant's knowledge and intent to possess and distribute cocaine at the suppression hearing, upon cross-examination of government witnesses, and in closing argument. The trial court did not then abuse its discretion in admitting evidence of the defendant's prior conviction for selling cocaine with a limiting instruction to the jury that the evidence was only to be considered for the purpose of showing that the defendant had the requisite knowledge and intent to commit the current offense.

■ The defendant also alleges that the trial court erred in denying defense motions to suppress the physical evidence seized from his car and residence, and oral statements made by him following his arrest because the affidavits on which the search

warrants for his car and house were based were insufficient to support a finding of probable cause. The defendant points to many unsupported and insignificant statements made by affiants that, standing alone, would be insufficient to support a probable cause finding; taken as a whole, however, the affidavits are not deficient.

Contrary to the defendant's contention, we find that the hearsay statements of the government informant contained in the affidavits, including significant information concerning the defendant's *modus operandi*, *see Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 2326, 76 L.Ed.2d 527 (1983), were amply corroborated through independent investigation. Most importantly, the informant told DEA agents that he overheard the defendant agreeing to deliver a quantity of cocaine (perhaps referred to by a recognized nickname in the drug underworld) from his residence in Arlington to the Hampton Toll Plaza around noon on December 14, 1982. On that date, affiants observed the defendant enter his car parked at his residence in Arlington carrying a brown paper package and drive to the Hampton Toll Plaza, arriving there shortly before noon. This type of independent corroboration of information, relayed by the informant in detail and stating the basis for his knowledge, together with the assertions of affiants that the informant had proved reliable in the past, were sufficient to support a finding of probable cause. *See Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1513, 12 L.Ed.2d 723 (1964); *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960); *United States v. Sclamo,* 578 F.2d 888, 890 (1st Cir.1978).

Finally, the defendant contends that his sentence, although within the limits set by the Drug Control Act, was unconstitutionally excessive. The role of a court reviewing a sentence determination is narrowly circumscribed. The reviewing court may overturn a sentence only when it exceeds the statutory limit, *see United States v. Fontanez,* 628 F.2d 687, 691 (1st Cir.1980), *cert. denied,* 450 U.S. 935, 101 S.Ct. 1401, 67 L.Ed.2d 371 (1981), or is so disproportionate to the offense for which it was imposed that it constitutes cruel and unusual punishment, *see Solem v. Helm,* —— U.S. ——, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983). We find that the defendant's sentence neither exceeds the statutory limit, *see* 21 U.S.C. § 841(b)(1)(A) (1982), nor constitutes cruel and unusual punishment.

AFFIRMED.