UNITED STATES of America, Appellee,

v.

Anthony PUGLISI, Anthony Bodami, Albert Morgan, and Antonio Pavone, Appellants.

Nos. 1044, 1050, 1054, 1051, Dockets 85–1439 to 85–1441 and 86–1032.

United States Court of Appeals, Second Circuit.

Argued March 31, 1986.

Decided May 8, 1986.

Paul J. Cambria, Jr., Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y., for appellant Puglisi.

Herbert L. Greenman, Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y., for appellant Bodami.

John J. Molloy, West Seneca, N.Y., for appellant Morgan.

Robert Blossner, New York City, for appellant Pavone.

Frank J. Clark, III, Asst. U.S. Atty. (Salvatore R. Martoche, U.S. Atty., for the W.D.N.Y., of counsel), for appellee.

Before OAKES, NEWMAN, and WINTER, Circuit Judges.

PER CURIAM:

After a jury trial before Chief Judge John T. Curtin in the United States District Court for the Western District of New York, appellants Anthony Puglisi, Anthony Bodami, and Albert Morgan were convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846 (1982), and of possessing cocaine with intent to distribute it in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (1982). Additionally, Puglisi was convicted of six counts, and Bodami of three counts, of using a telephone to facilitate commission of a felony in violation of 21 U.S.C. § 843(b) (1982). All three co-defendants appeal. A fourth co-defendant, Antonio Pavone, pleaded guilty to a charge of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (1982), but reserved his right to appeal from the district court's orders denying suppression of intercepted wire communications and evidence seized from his apartment. We affirm all four convictions.

Appellants first argue that eavesdropping warrants should not have issued here because the requirements of 18 U.S.C. §§ 2518(1)(c) and 2518(3)(c) (1982)—that the application for a warrant reflect, and the issuing judge determine, that other, normal "investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous," 18 U.S.C. § 2518(3)(c)—were not met here. We disagree. The district court, which is entitled to deference, *United States v. Wilkinson*, 754 F.2d 1427, 1433 (2d Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985), refused to suppress the wiretap evidence, finding that other procedures either were tried and shown to be unfruitful or were impractical. This finding was based on an affidavit submitted in support of a wiretap authorization application claiming that visual surveillance had been unsuccessful,

that confidential informants were unable adequately to penetrate the conspiracy and were in any event unwilling to testify, and that an undercover officer would be unable to infiltrate the conspiracy because of the close-knit nature of the group and its strong ethnic ties. Surveillance had taken place for over six months, pen registers had been used for over five months, and three informants had provided data to the FBI over a period of two years. This stands in stark contrast to *United States v. Lilla*, 699 F.2d 99, 104–05 (2d Cir.1983), where, less than a month after being informed that Lilla was selling narcotics, and after buying marijuana directly from Lilla, a state trooper obtained an eavesdropping warrant solely on the strength of his representations that no other investigative method would reveal Lilla's co-conspirators.

■ Appellants next claim that the Government failed to prove every element of the crime charged because it did not prove that the cocaine involved in this case was, or was chemically equivalent or identical to, L-cocaine, the cocaine isomer derived from the coca leaf and therefore the only isomer that was a controlled substance as defined in Schedule II(a)(4), 21 U.S.C. § 812(c) (1982), before its amendment in 1984.[1] *See United States v. Ross*, 719 F.2d 615, 617–18 (2d Cir.1983). Appellants argue that *Ross* requires reversal. We disagree. *Ross* held only that where the cross-examination of the Government's chemist revealed his serious confusion and questionable credibility regarding whether the seized cocaine had been L-cocaine or D-cocaine, the court erred in instructing the jury that D-cocaine was equivalent to L-cocaine because it allowed the jury to convict even if it found the defendants had possessed D-cocaine. *Id.* at 618. By contrast, in this case, appellants never raised an issue regarding which cocaine isomer

was seized. The circumstances here are virtually identical to those in *United States v. Francesco*, 725 F.2d 817 (1st Cir.1984) (upholding conviction for possession of narcotics where the substances were referred to only as "cocaine" and "cocaine hydrochloride" and there was no testimony regarding isomers). There, the court stated, "Although the government has the burden ... of proving every element of the offense charged, it has no burden of proving that a term used in its commonly understood sense has no other possible meaning—at least until the possibility of another meaning is raised by the defense." *Id.* at 821. Because no issue was raised as to which isomer of cocaine was involved here, the Government was not required to offer evidence on the matter. *Cf. United States v. Carr*, 582 F.2d 242, 244–46 (2d Cir.1978) (Government not required to prove lack of authorization to make loan application in false name).

■ Appellants Puglisi and Bodami claim that the district court erred in refusing to admit their post-arrest statements. Both, however, were properly excluded as hearsay. That the statements may have indicated an intent to cooperate with law enforcement personnel does not bring them within the "state of mind" exception of Fed.R.Evid. 803(3), since the statements themselves do not reveal a state of mind.

■ Appellant Bodami claims the district court erred in refusing to admit in its entirety Pavone's post-arrest statement in which Pavone incriminated Puglisi but did not mention Bodami. Bodami claimed the statement was exculpatory as to him and that the refusal to admit it because it would inculpate his co-defendant was improper. The Government's contentions—

---

1. The Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, Title II, § 507(a), (c), 98 Stat.1976, 2071, amended Title 21 to include in Schedule II "cocaine and ecgonine and their ... isomers," 21 U.S.C. § 812(c), Schedule II(a)(4) (Supp.II 1984), and to define "isomer" for the purpose of this section as "the optical or geometric isomer." 21 U.S.C. § 802(14) (Supp.

II 1984). These amendments were intended to render the "isomer defense" ineffective. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 263, *reprinted in* 1984 U.S. Code Cong. & Ad. News 3182, 3445. However, the activity giving rise to this case took place on December 2, 1983, and we must therefore consider the statute as it stood before its amendment on October 12, 1984.

that since Bodami does not seek review of the denial of his motion to sever his trial from Puglisi's, he cannot complain of any exclusions thereafter required under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and that under Fed.R.Evid. 803(24) and 804(b)(5), the interests of justice would not have been served by admitting the statement because it would prejudice Puglisi—are unconvincing and, indeed, inappropriate. The Government can hardly insist on multi-defendant trials and then claim that the interests of justice require the exclusion of evidence inculpatory as to one defendant even if it helps another. Nor can it assert persuasively that failure to challenge on appeal denial of a severance motion means a defendant loses his basis to challenge the exclusion of evidence introduced after the refusal to sever. However, in this case, we think that if error occurred, it was harmless. There was ample evidence that Bodami and Puglisi spent the entire evening together and the wiretap evidence reflected several calls in which Bodami and Puglisi made plans for the night in question.

■ Appellants next claim that the court erred in failing to charge that an individual who merely purchases drugs cannot be convicted of aiding or abetting the sale. If there was an error in this respect, it was also harmless. The machinations of Puglisi and Bodami, as reflected by the wiretap evidence, combined with the fact that it was Morgan rather than they who received the drugs, amply supported the aiding and abetting conviction.

Appellant Pavone claims that the search of his apartment was invalid because the Government failed to prove that Pavone's consent to the search was voluntary as required by *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). Under *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973), "whether a consent to a search was in fact 'voluntary' ... is a question of fact to be determined from the totality of all the circumstances." *See also United States v. Wien-er,* 534 F.2d 15, 17 (2d Cir.) (district court's factual finding of consent will not be set aside unless clearly erroneous), *cert. denied,* 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976). In this case, Pavone was apparently walking out of his apartment when he was apprehended by FBI agents waiting in the hallway with weapons drawn. He was frisked, handcuffed, and informed he was being arrested for narcotics violations. He was then brought back into his apartment and advised of his constitutional rights. The agents determined that they needed a warrant to search the apartment. They then asked Pavone if he was willing to allow the agents to search the apartment. He said he had no objection. The agents drafted a consent form, and additionally located a preprinted consent form, both of which Pavone signed, even after he was informed by one of the agents that he did not have to consent to a search. The agents then executed the search.

■ Notwithstanding protests to the contrary, *see, e.g., United States v. Watson,* 423 U.S. 411, 456–58, 96 S.Ct. 820, 843–44, 46 L.Ed.2d 598 (1976) (Marshall, J., dissenting), the fact that a defendant is in custody does not alone vitiate his consent to a search. *See Watson,* 423 U.S. at 424–25, 96 S.Ct. at 828–29. True, consent to search obtained from a person in custody does "require more careful scrutiny." *Wiener,* 534 F.2d at 17. In addition to those considerations *Schneckloth,* 412 U.S. at 226, 93 S.Ct. at 2047, listed as among those pertinent to the voluntariness question—age, education, intelligence, length of detention, use of physical punishments or deprivations, and whether the alleged consenting person was advised of his constitutional rights—this circuit has found, in cases where consent is obtained from a person in custody, that whether guns were drawn or the consenting individual was frisked, *United States v. Vasquez,* 638 F.2d 507, 524 (2d Cir.1980), *cert. denied,* 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135 (1981), or whether the consenting individual was threatened, was in a public area, or was informed that he had the option of

refusing consent to the search, *United States v. Vasquez-Santiago*, 602 F.2d 1069, 1073 (2d Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980), are simply relevant factors in determining the voluntariness of the consent. In this case, while the appellant was advised of his *Miranda* rights and advised that he did not have to consent to a search, he was in handcuffs, had been arrested by agents with weapons drawn, and had been frisked. The district court made no factual findings with reference to Pavone's age, intelligence, or experience with law enforcement, noting only that, "[t]hough he may have had some difficulty with written English, the agents also advised him of his rights orally, and he understood them." Nonetheless, in light of the district court's ability to judge the credibility of the agent who obtained the consent, we cannot find the judge's conclusion that Pavone voluntarily consented to the search clearly erroneous.

We have considered the parties' other contentions and find them unavailing.

Judgment affirmed.