STATE of Wisconsin, Plaintiff-Respondent,

v.

Rogers H. CLEMENT, Defendant-Appellant.†

Court of Appeals

*No. 89-1191. Submitted on briefs October 3, 1989.—Decided November 15, 1989.*

(Also reported in 450 N.W.2d 789.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *William J. Tyroler,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, with *James M. Freimuth,* assistant attorney general.

Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J. Rogers H. Clement pleaded guilty to charges of first-degree sexual assault, sec. 940.225(1)(b), Stats., and kidnapping while armed, secs. 940.31 and 939.63, Stats. Pursuant to sec. 974.06, Stats., he moved the trial court to withdraw his guilty plea to the kidnapping charge. His motion was denied, and this appeal follows.

On appeal, Clement argues: (1) that his conduct did not fulfill the element of kidnapping prescribing the

intent to hold the victim to "service against his will";[1] (2) that because he misunderstood the scope of this element, his plea was not made knowingly and voluntarily; (3) that Wisconsin's kidnapping statute, sec. 940.31, Stats., is unconstitutionally vague and overbroad; and, (4) that he should be permitted to withdraw his guilty plea because of the prosecutor's breach of his plea agreement. We conclude that the meaning of sec. 940.31, Stats., is clear and unambiguous. Clement's conduct fulfilled the "held to service" element of the statute, and his plea was made knowingly and voluntarily. We conclude that Clement does not have standing to challenge the statute as unconstitutionally vague or overbroad. In addition, we hold that there was no prosecutorial breach of the plea agreement. Therefore, we affirm the order denying Clement's post-conviction motion.

---

[1]Section 940.31, Stats., provides:

**940.31 Kidnapping. (1)** Whoever does any of the following is guilty of a Class B felony:

 (a) By force or threat of imminent force carries another from one place to another without his consent and with intent to cause him to be secretly confined or imprisoned or to be carried out of this state or to be held to service against his will; or

 (b) By force or threat of imminent force seizes or confines another without his consent and with intent to cause him to be secretly confined or imprisoned or to be carried out of this state or to be held to service against his will; or

 (c) By deceit induces another to go from one place to another with intent to cause him to be secretly confined or imprisoned or to be carried out of this state or to be held to service against his will.

 **(2)** Whoever violates sub. (1) with intent to cause another to transfer property in order to obtain the release of the victim is guilty of a Class A felony; but if the victim is released without permanent physical injury prior to the time the first witness is sworn at the trial the defendant is guilty of a Class B felony.

Kidnapping is punishable by imprisonment not to exceed 20 years. Sec. 939.50(3)(b), Stats.

A post-conviction motion to withdraw a guilty plea is a matter of trial court discretion. *State v. Duychak,* 133 Wis. 2d 307, 312, 395 N.W.2d 795, 798 (Ct. App. 1986). It will be granted "only when necessary to correct a manifest injustice." *Id.* A guilty plea must be made knowingly, voluntarily, and intelligently. *Id.* (*citing State v. Bangert,* 131 Wis. 2d 246, 260, 389 N.W.2d 12, 20 [1985]). The trial court's conclusion that a guilty plea was taken under constitutionally acceptable circumstances is a matter of law which this court reviews *de novo. Id.* at 313, 395 N.W.2d at 798.

We begin our analysis with the kidnapping statute itself, sec. 940.31, Stats. The criminal complaint alleged that Clement, "by threat of imminent force, seized [the victim] without her consent and with intent to hold her to service against her will." This allegation tracks the language of sec. 940.31(1)(b), Stats.:

> **(1)** Whoever does any of the following is guilty of a Class B felony:
>
> . . ..
>
> (b) By force or threat of imminent force seizes or confines another without his consent *and with intent to cause him* to be secretly confined or imprisoned or to be carried out of the state or *to be held to service against his will.*

[Emphasis added.]

The crux of this appeal involves the element requiring the intent to hold the victim "to service" against her will. Clement argues that the conduct for which he was charged does not fulfill this element. In particular, he contends that the service element cannot be fulfilled by sexual assault alone. Alternatively, he argues that this

292

element renders the statute unconstitutionally vague and overbroad.

In interpreting a statute, we first examine the language of the statute to determine if it is clear or ambiguous. We may look to extrinsic aids, such as legislative history, only if ambiguity exists. *Marshall-Wisconsin Co., Inc. v. Juneau Square Corp.,* 139 Wis. 2d 112, 133, 406 N.W.2d 764, 772 (1987). In making this threshold determination we look to the common and approved usage of words as established by dictionary definitions. *State ex rel. Smith v. City of Oak Creek,* 139 Wis. 2d 788, 795, 407 N.W.2d 901, 904 (1987).

The *American Heritage Dictionary* (2d College Ed. 1976) defines "service," in part, as, "[t]he occupation or duties of a servant" and "[e]mployment in duties or work for another." "Servant" is defined in part as, "[o]ne who expresses submission, recognizance, or debt to another." *Webster's Third New International Dictionary* (1976) offers twenty definitions of "service," including, "the condition or occupation of a servant," "the performance of work commanded or paid for by another," and "an act done for the benefit or at the command of another." *Webster's* first definition of "servant" is, "a person bound to do the bidding of a master or superior: one that must work for another and obey him." In light of this definitional background, we conclude that the meaning of sec. 940.31(1)(b) is clear on its face. Therefore, we do not resort to extrinsic aids in interpreting the statute. The word "service," as it is used in sec. 940.31, includes acts done at the command of another. It clearly embraces sexual acts performed at the command of another.

293

Our conclusion is also supported by *Clark v. State,* 92 Wis. 2d 617, 286 N.W.2d 344 (1979). In *Clark,* the supreme court affirmed the defendant's conviction for attempted kidnapping. The evidence was that Clark testified he had stopped the victim and pointed a gun at her "probably for sex." *Id.* at 634, 286 N.W.2d at 351. The supreme court held:

> It cannot be said that the evidence in the case at bar is insufficient for a trier of fact to have concluded that defendant intended to kidnap the victim, that is, intended by threat of imminent force to seize or confine her without her consent and to cause her to be held for service against her will.

*Id.* at 636, 286 N.W.2d at 351. Although the issue in *Clark* was the sufficiency of the evidence, the court's decision reflects its implicit conclusion that a sexual assault is within the scope of "service against her will."

The complaint describes the conduct for which Clement was charged as follows:

> [The victim] states that at about 6:45 a.m. on September 26, 1986, she was walking to her place of employment. [The victim] states that when she reached the vicinity of 80th and National Avenue in the City of West Allis, the defendant approached her from behind, placed a knife to her throat and stated, "Do what I say or you are going to get hurt." [The victim] states that the defendant then led her down a railroad right of way to a point approximately 150 feet east of 80th Street and adjacent to railroad tracks. [The victim] states that the defendant then required her to partially remove her clothing and the defendant thereafter placed his penis inside of her vagina. [The victim] states that the defendant interrupted the act of sexual intercourse and required her to suck on his penis to improve his erection prior to

completing the act of sexual intercourse. [The victim] states that she did not consent to be with the defendant, nor to have any sort of sexual contact with him and suffered said contact with the defendant because of her fear of him. [The victim] states that the defendant fled the scene after he had finished the act of sexual intercourse, but could not find his car keys. [The victim] states that she refused to assist the defendant in searching for his car keys.

Upon this factual backdrop, it is clear that Clement not only intended to hold his victim to service against her will but actually did so.[2]

The elements of kidnapping defined in sec. 940.31(1)(b) are:

(1) the seizure or confinement of the victim;

(2) the lack of consent;

(3) the use or threat of force;

(4) the intent: (a) to secretly confine the victim, or (b) to imprison the victim, or (c) to transport the victim out of state, or (d) to hold the victim to service against his or her will.

*See* sec. 940.31(1)(b), Stats.; Wis. J I—Criminal 1281 (1980). In this case, Clement seized the victim, without the victim's consent, by force, and with the intent to hold the victim to service against her will. His conduct was clearly proscribed by sec. 940.31(1)(b), Stats.

The state contends that Clement does not have standing to challenge the kidnapping statute as unconstitutionally vague. We agree. A party whose conduct is

[2]Clement does not challenge the accuracy of these allegations, but only their legal significance.

clearly proscribed by the statute in question does not have standing to challenge it on the grounds of being vague as it may be applied to others. *City of Milwaukee v. K.F.,* 145 Wis. 2d 24, 33–35, 426 N.W.2d 329, 333–34 (1988). As we have demonstrated, Clement's conduct clearly falls within the parameters of sec. 940.31. Therefore, he may not challenge the statute as unconstitutionally vague. *Id.* at 37–39, 426 N.W.2d at 335–36.

We now turn to Clement's contention that the statute is overbroad. The concept of overbreadth was explained by the supreme court in *City of Milwaukee v. K.F.:*

> "A statute is overbroad when its language, given its normal meaning, is so sweeping that its sanctions may be applied to constitutionally protected conduct which the state is not permitted to regulate. The essential vice of an overbroad law is that by sweeping protected activity within its reach it deters citizens from exercising their protected constitutional freedoms, the so-called 'chilling effect.' "

*Id.* at 39–40, 426 N.W.2d at 336 (citations omitted). "[O]verbreadth concerns substantive due process and is directed to 'preventing the limiting, by indirection, of constitutional rights.' " *Id.* at 40, 426 N.W.2d at 336 (citation omitted).

We recognize a distinction between the rules of standing related to constitutional vagueness and those related to constitutional overbreadth:

> Rules of standing have been liberalized with respect to overbreadth challenges such that even where the challenger's conduct might constitutionally be regulated, the challenger "may hypothesize situations where the statute is so broad that it would chill legiti-

296

mate activities and apply to fact situations where the regulation sought to be imposed would violate fundamental first-amendment rights."

*Id.* at 34, 426 N.W.2d at 333 (citation omitted). This "doctrine is predicated on the danger that an overly broad statute, if left in place, may cause persons whose expression is constitutionally protected to refrain from exercising their rights for fear of criminal sanctions." *Massachusetts v. Oakes,* 109 S. Ct. 2633, 2637 (1989). However, absent a potential impingement on First Amendment rights, or the extraordinary circumstance where "those not parties to a particular suit stand to lose by its outcome and yet have no effective avenue of preserving their rights themselves," *Broadrick v. Oklahoma,* 413 U.S. 601, 611 (1973), a party may not challenge a statute as being constitutionally overbroad if it is constitutionally applied to the party's conduct. *Id.,* 413 U.S. at 610–11. Neither of the exceptions recognized by *Broadrick* apply here. Thus, Clement has no standing to mount an "overbreadth" challenge to sec. 940.31, Stats. *See id.*

In addition, we hold that Clement's guilty plea was made knowingly, voluntarily, and intelligently. *See Duychak,* 133 Wis. 2d at 312, 395 N.W.2d at 798. Clement argues that he misunderstood the charge because he failed to realize that sexual assault cannot fulfill the service element of the statute. However, Clement's argument is premised upon an erroneous interpretation of the statute. As we have demonstrated, sexual assault can, and in this case did, fulfill the service element of the crime. Therefore, Clement's argument on this point is baseless.

The following discussion took place during Clement's plea hearing:

THE COURT: Do you further understand, with regard to Count 3, Kidnapping While Armed With a Dangerous Weapon, the State would have to show beyond a reasonable doubt that on September 26, 1986, in the area of 80th Street and National Avenue, in the City of West Allis, by threat of imminent force, you did seize [the victim] without her consent and with intent to hold her to service against her will, and further, that said crime was committed while threatening the use of a dangerous weapon? The State would have to prove each of the allegations contained in this charge beyond a reasonable doubt if you did not plead guilty, and by pleading guilty, you are relieving the State of that obligation; do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. Now your attorney has read very carefully the complaint and explained the complaint and the charges in the amended complaint that are presented here today; is that correct?

THE DEFENDANT: Yes.

We hold that this exchange sufficiently demonstrates that Clement understood the nature of the kidnapping charge. *See* sec. 971.08(1)(a) and (b), Stats.; *Duychak,* 133 Wis. 2d at 314, 395 N.W.2d at 798–99.

Finally, Clement argues that he should be permitted to withdraw his plea, or, alternatively, that he is entitled to resentencing, due to a violation of the plea bargain.

Under the plea bargain, the prosecutor was to recommend "a very substantial period of incarceration but . . . make no specific recommendation to the court with regard to the precise number of years to be imposed." During the sentencing hearing the following colloquy took place:

[THE PROSECUTOR]: I would just reiterate to the Court, also, that the recommendation which the

State agrees is that a very substantial term of imprisonment be imposed. I think that that recommendation is one that's appropriate, given the extremely violent and absolutely horrendous nature of what Mr. Clement did. This offense is really every woman's nightmare, to be abducted at knifepoint on your way to work early in the morning, and then to be subjected to the sexual abuse that Mr. Clement subjected [the victim] to is just an unspeakably horrendous crime, and I think that that crime in and of itself would justify the recommendation that the State is making. Beyond that, of course, is the—

THE COURT: Are you making a recommendation for a—maximum consecutive sentences?

[THE PROSECUTOR]: Well, Judge, the terms of the negotiation were that the State would make a recommendation for very substantial incarceration but without making a recommendation regarding specific number of years, so I feel constrained with regard to that particular issue.

THE COURT: I see.

[THE PROSECUTOR]: I would note—

THE COURT: The presentence examiner, I believe, does make that recommendation.

[THE PROSECUTOR]: That's correct.

THE COURT: All right,—

[THE PROSECUTOR]: I would note, too, of course, that the defendant's prior record, I think, is particularly alarming and therefore makes the State's recommendation appropriate.

THE COURT: Do I have the prior record?

[THE PROSECUTOR]: Also, I think significant is the assessment of the presentence writer about the intelligence of Mr. Clement and the decision that he has made to adopt a totally criminal lifestyle, and I think that that also—I think that's an appropriate assessment by that agent.

In addition, the state sponsored the testimony of the victim and her fiance, both of whom asked the court to impose the maximum sentence. Clement argues that the prosecutor violated the plea agreement by using the term "constrained" in describing the plea agreement to the court, by praising the presentence report, which recommended the maximum sentence, and by sponsoring statements of the victim and her fiance who also recommended the maximum sentence.

Again, the withdrawal of a guilty plea is a matter of trial court discretion, so the test on review is whether there was an abuse of discretion. *State v. Bangert,* 131 Wis. 2d 246, 288–89, 389 N.W.2d 12, 32 (1986). Clement has the burden to prove that a material and substantial breach of the plea agreement occurred. *Id.* at 289, 389 N.W.2d at 32. We conclude that Clement has failed to meet this burden.

Clement cites *State v. Poole,* 131 Wis. 2d 359, 394 N.W.2d 909 (Ct. App. 1986), as the leading case. The facts of *Poole* are summarized as follows:

> Defendant pleaded guilty to a burglary charge pursuant to a plea agreement in which the state would recommend a fine of $1500.00. At sentencing, the prosecutor recommended the fine, but noted that this recommendation was agreed to "before we knew of the other instances. But that is our agreement." The "other instance" was a separate case in which defendant's probation had been revoked. The court imposed a five-year sentence, concurrent with the three-year term defendant was already serving. Defendant alleged the state had breached its agreement . . ..

*Id.* at 360, 394 N.W.2d at 910–11. This court held that the plea agreement had been breached. We stated:

300

> We conclude that a prosecutor may not render less than a neutral recitation of the terms of the plea agreement. The recommendation in the case at hand fell below that standard. The prosecutor's comments implied that circumstances had changed since the plea bargain, and that had the state known of the other instances of defendant's misconduct, they would not have made the agreement they did.

*Id.* at 364, 394 N.W.2d at 911 (footnote omitted).

However, the case at hand is readily distinguishable from *Poole.* In this case, no implication can be drawn from the prosecutor's statement that would have suggested to the court that the state had second thoughts about the terms of its agreement. This case is similar to *State v. Bangert.* In *Bangert,* the parties had agreed that the state " '*would not directly or indirectly mention the word maximum* in connection with [the] sentence recommendation.' " *Bangert,* 131 Wis. 2d at 286, 389 N.W.2d at 31. At the sentencing hearing, the prosecutor stated: "Pursuant to plea agreements . . . the State is not going to ask the Court to impose the maximum sentence." *Id.* at 287, 389 N.W.2d at 32. The defendant in *Bangert* alleged that the prosecutor's statement constituted a breach of the plea agreement. *Id.* The supreme court disagreed and held that no substantial and material violation of the agreement had occurred. *Id.* at 289–90, 389 N.W.2d at 33.

Similarly, in this case there was no substantial and material breach of the agreement. The prosecutor agreed not to recommend a particular number of years, and the record demonstrates her full compliance with that agreement.

We also reject Clement's contention that the prosecutor breached the agreement by commenting favorably

on the presentence report and by sponsoring the testimony of the victim and her fiance. The plea agreement applied to the prosecutor's recommendation alone. There is no evidence that the prosecutor advised or encouraged the victim and her fiance to recommend the maximum sentence. Therefore, we affirm the denial of Clement's motion to withdraw his guilty plea.

*By the Court.*—Order affirmed.