STATE of Wisconsin, Plaintiff-Appellant-Cross Respondent,†

v.

Wandell LEE, Defendant-Respondent-Cross Appellant.

STATE of Wisconsin, Plaintiff-Appellant-Cross Respondent,†

v.

Thomas CASEY, Defendant-Respondent-Cross Appellant.

Court of Appeals

*No. 93–2546–CR. Submitted on briefs January 3, 1995.—Decided February 28, 1995.*

(Also reported in 531 N.W.2d 351.)

†Petition to review granted.

For the plaintiff-appellant-cross respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general and *James M. Freimuth*, assistant attorney general.

For the defendants-respondents-cross appellants the cause was submitted on the briefs of *James M. Shellow* and *Craig W. Albee* of *Shellow, Shellow & Glynn, S.C.* of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

WEDEMEYER, P.J. The State appeals from a non-final order that directs the Wisconsin State Crime Laboratories to conduct additional analysis, requested by each defendant, on alleged cocaine base.[1] The defendants, Wandell Lee and Thomas Casey,[2] each cross-appeal from non-final orders denying their motions to dismiss, which alleged that the statute proscribing possession and delivery of cocaine is unconstitutional. The State claims that the trial court erroneously exercised its discretion when it ordered the Crime Lab to perform the tests requested by Lee and Casey. Lee and Casey claim that the statute is overbroad and is an abuse of police power and, therefore, the trial court erred in denying their motions to dismiss. Because the trial court did not erroneously exercise its discretion in ordering the Crime Lab to perform certain tests, we affirm the order that is the basis of the appeal. Because Lee and Casey do not have standing to assert a constitutional or police power challenge in these circumstances, we also affirm the orders that are the bases of the cross-appeal.

---

[1] The State filed a notice of voluntary dismissal of its appeal. An order was issued granting the voluntary dismissal on December 22, 1994. This opinion was released on February 28, 1995. After investigating these seemingly conflicting results, this court discovered that the December 22 order was issued inadvertently. Because the issue on appeal is one of statewide concern, we invoked our inherent power to vacate the December 22 order and exercised our discretionary authority to deny the State's motion for voluntary dismissal. *See State v. Thiel*, 171 Wis. 2d 157, 491 N.W.2d 94 (Ct. App. 1992); *see also In re Peter B.*, 184 Wis. 2d 57, 516 N.W.2d 746 (Ct. App. 1994).

[2] Lee and Casey's cases were consolidated for the purpose of resolving the issues raised in the appeal and cross-appeal.

## I. BACKGROUND

Wandell Lee was charged with possession of cocaine base with intent to deliver, party to a crime, contrary to §§ 161.14(7)(a), 161.41(1m)(cm)1., and 939.05, STATS., 1991-92. Thomas Casey was charged with delivery of cocaine base, contrary to §§ 161.14(7)(a) and 161.41(1)(cm)1., STATS., 1991-92. The Crime Lab performed infrared spectrometry on the suspected substances and visually compared the results with a paradigm spectrum of known cocaine base. From this analysis, the lab analyst concluded that the substances were cocaine base. Lee and Casey both filed motions pursuant to § 165.79(1), STATS., requesting that the trial court order the Crime Lab to perform certain additional tests on the substances. Lee and Casey's cases were consolidated for purposes of ruling on these motions. The trial court granted the motions. Specifically, the trial court directed the Crime Lab to conduct a computer search of certain library data bases for spectra which match the infrared spectrum produced for the evidence. The State filed a petition to appeal the trial court's non-final order on this issue, which this court granted.

Lee and Casey also filed motions to dismiss the charges pending against them, alleging that § 161.14(7)(a), STATS., 1991-92 is unconstitutional and its enactment constitutes an abuse of police power. The trial court denied the motions, finding that Lee and Casey lacked the requisite standing to assert constitutional challenges and that the enactment of the statute was not an abuse of police power. This court granted Lee and Casey's requests to cross-appeal from these non-final orders.

## II. DISCUSSION

*A. Appeal*

The State claims that the trial court erroneously exercised its discretion under § 165.79(1), STATS., when it ordered the Crime Lab to perform tests on the evidence at the request of Lee and Casey. The State relies on two bases for its contention: (1) it is error to order the Crime Lab to retest evidence on behalf of Lee and Casey for the very same purpose for which it has already been tested; and (2) it is error to order the Crime Lab to conduct testing procedures that it does not normally employ.

Section 165.79(1), STATS., indicates that granting a defendant's request that the Crime Lab perform tests on the defendant's behalf is a discretionary determination. *See* § 165.79(1), STATS.[3] Accordingly, the standard of review is whether the trial court erroneously exercised its discretion. We will find that the trial court did not erroneously exercise its discretion if "the trial court examined the facts of record, applied a proper legal standard, and, using a rational process, reached a reasonable conclusion." *See State v. Pittman*, 174 Wis. 2d

---

[3] The statute states in pertinent part:

Evidence, information and analyses of evidence obtained from law enforcement officers by the laboratories is privileged and not available to persons other than law enforcement officers nor is the defendant entitled to an inspection of information and evidence submitted to the laboratories by the state or of a laboratory's findings, or to examine laboratory personnel as witnesses concerning the same, prior to trial, except to the extent that the same is used by the state at a preliminary hearing. Upon request of a defendant in a felony action, approved by the presiding judge, the laboratories shall conduct analyses of evidence on behalf of the defendant.

255, 268, 496 N.W.2d 74, 79-80, *cert. denied*, 114 S. Ct. 137 (1993).

The record demonstrates that the trial court examined the following relevant facts: that the Crime Lab is capable of performing the test requested by Lee and Casey; the Crime Lab generally does not perform the computer matching test, but on occasion the computer search functions are performed; the test requested by Lee and Casey is one way that the infrared spectra can be evaluated; and the estimated time needed to conduct the requested test is one and one-half hours.

The standards applied by the trial court included: (1) the ability of the Crime Lab to do the analysis; (2) the costs or other burdens of performing the analysis; (3) the ability of the defendant to have the tests done independently; (4) the potential value of the test results to the defendant; and (5) the extent to which the tests might aid in the presentation of evidence at trial or perhaps obviate the need for a trial altogether. We conclude that these are appropriate factors for a trial court to consider when deciding whether to grant a defendant's request for testing under § 165.79(1), STATS.

In applying these standards to the facts of this particular case, the trial court concluded that Lee and Casey's request for testing should be granted. In reaching this conclusion, the trial court reasoned that: (1) the Crime Lab is clearly capable of performing the requested analysis; (2) the costs and estimated time burdens are relatively low; (3) there is some dispute as to whether another independent laboratory could perform the test and it is undisputed that the defendants are indigent and therefore, could not pay for the test-

267

ing; (4) the potential value of the analysis is uncertain, but the defendants have made a sufficient showing that such testing may be critical to the presentation of their case; and (5) such testing may be of vital help to the court and the jury because the testing will allow the jury to consider concrete results rather than abstract theory when it considers the defendants' challenges to the infrared spectrometry results.

We reject the State's contention that the trial court erroneously exercised its discretion because the defendants' requests involve "re-testing" and performing tests that are not normally conducted. Lee and Casey have not requested that an identical test be performed. Each has requested an additional test. The fact that the requested tests have the same purpose (identifying the substance) as the test already performed does not preclude the trial court from granting the request. We also reject the State's contention that it is error to order the Crime Lab to perform tests it does not normally use. The trial court considered this fact in determining whether the Crime Lab is capable of performing the requested analysis. The record demonstrates that the Crime Lab is capable of performing the tests requested by the defendants and, on occasion, does employ the computer matching analysis. In addition, the statutory language does not preclude the trial court from instructing the Crime Lab to conduct tests it does not normally perform.

██

Based on the foregoing, we conclude the trial court did not erroneously exercise its discretion in deciding to grant Lee and Casey's requests for Crime Lab testing.[4]

---

[4] Lee and Casey also argued that they have a constitutional right to have the requested testing performed. Because we have

### B. Cross-Appeal

Lee and Casey cross-appeal from non-final orders denying their motions to dismiss. The motions to dismiss were based on the contention that § 161.14(7)(a), STATS., 1991-92 is unconstitutionally overbroad and its enactment constitutes an abuse of police power. The trial court concluded that Lee and Casey did not have proper standing to allege that § 161.14(7)(a) is unconstitutionally overbroad. The trial court also concluded that the enactment of the statute was not an abuse of police power. We agree that the defendants do not have proper standing to assert a constitutional challenge. Accordingly, we affirm the trial court.

■

A statute is unconstitutionally overbroad if it has the effect or potential of chilling or inhibiting speech which is protected by the First Amendment. *City of Milwaukee v. Wroten*, 160 Wis. 2d 207, 225, 466 N.W.2d 861, 868 (1991). The concept of overbreadth is generally limited to cases involving the First Amendment. *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see Bachowski v. Salamone*, 139 Wis. 2d 397, 411, 407 N.W.2d 533, 539 (1987). Lee and Casey assert that § 161.14(7)(a), STATS., 1991-92 is unconstitutionally overbroad because of the definition of cocaine base in the statute. Cocaine base is defined to include: "any material, compound, mixture or preparation which contains any quantity of [cocaine base] having a stimulant effect on the central nervous system, including its

---

already concluded that the trial court did not erroneously exercise its discretion in allowing the testing to be performed, we need not address the constitutional argument. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issues need be addressed).

isomers."[5] Lee and Casey argue that this definition is overbroad because it makes illegal thousands of isomers of cocaine base that have no harmful effect and actually may serve medicinal purposes. Accordingly, Lee and Casey contend that individuals who possess or deliver such an isomer may be prosecuted for possessing or delivering a controlled substance.

Outside of the First Amendment context, a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court. *City of Milwaukee v. Wilson*, 96 Wis. 2d 11, 19, 291 N.W.2d 452, 457-58 (1980). Lee and Casey are not charged with possessing or delivering an isomer of cocaine base.[6] Therefore, the statute may be applied constitutionally to Lee and Casey. Moreover, Lee and Casey's challenge does not involve rights protected by the First Amendment. As a result, Lee and Casey do not possess the requisite standing to assert that § 161.14(7)(a), STATS.,

---

[5] An isomer is a substance with the same chemical makeup but a different structural composition. *See Huser v. Rasmussen*, 84 Wis. 2d 600, 611 n.3, 267 N.W.2d 285, 290 n.3 (1978) (citation omitted).

[6] Contrary to the dissent's implication, the majority opinion does not preclude Lee or Casey from attempting to prove at trial that the substance in their possession was not cocaine base. This opinion holds that because Lee and Casey were charged with possession and delivery of cocaine base, they do not have standing to challenge the constitutionality of the statute as possibly applied to persons who might, theoretically, be charged under the statute with possessing a substance that is not cocaine base.

1991-92 is unconstitutionally overbroad, and we affirm the order of the trial court.[7]

██

Lee and Casey also claim that the broad definition of cocaine base demonstrates an abuse of police power because it criminalizes the possession and sale of harmless substances the state has no legitimate interest in prohibiting. We reject this argument because neither defendant has proper standing to assert it. Lee and Casey were not charged with possession or sale of a harmless substance. Accordingly, Lee and Casey do not have standing to assert that the broad definition within the statute constitutes an abuse of police power. In sum, we affirm the trial court's order denying Lee and Casey's motions to dismiss.

*By the Court.*—Orders affirmed.

SCHUDSON, J. (*concurring in part; dissenting in part*). Concluding that Lee and Casey do not have standing, the majority has done little more than invoke well-settled standing principles that are not at issue. Thus, the majority has failed even to acknowledge the

---

[7] Courts may make an exception to the First Amendment requirement in "extraordinary circumstances." *See Broadrick v. Oklahoma*, 413 U.S. 601, 611 (1973); *see also, State v. Clement*, 153 Wis. 2d 287, 297, 450 N.W.2d 789, 792 (Ct. App. 1989). The extraordinary circumstances case allows an overbreadth challenge outside the context of the First Amendment only where "those not parties to a particular suit stand to lose by its outcome and yet have no effective avenue of preserving their rights themselves." *Id.* at 297, 450 N.W.2d at 792. The instant case is not one of extraordinary circumstances. Anyone charged with possessing or delivering an isomer that is harmless can challenge the statute at that time.

substantial theory of standing that Lee and Casey have presented to this court:

> The cocaine base statute, as applied to these defendants, forecloses a defense based upon a reasonable doubt whether the substances in question are cocaine base or some other innocuous substance with the same chemical formula. For that reason, Lee and Casey are affected directly by the statute for they can be convicted whether the state proves the substance is cocaine base or some other isomer such as scopolamine.
>
> . . . .
> The defendants have standing because they are directly affected by the overly broad definition of cocaine base which precludes them from defending this charge by showing the substance may not have been *l*-cocaine base, but just a harmless isomer. The definition of cocaine base makes it irrelevant whether the defendants in fact possessed scopolamine or *l*-cocaine base, because both substances are prohibited.

Lee and Casey state that they "intend to defend these cases in part by challenging the state's ability to prove the substances they possessed were in fact cocaine base." Indeed, they made that point forcefully before the trial court:

> THE COURT: The state apparently claims that it can prove that this substance, or that it intends to prove at trial, that this substance is cocaine base, not relying on any isomer theory to get to the jury. Apparently they feel they can prove this is cocaine base to the exclusion of anything that might be a deodorant or horse sweat or hair—
>
> MR. SHELLOW [counsel for Lee and Casey]: Or d-cocaine.

272

THE COURT: Or any isomer. If they can prove that at trial as they've alleged, they simply allege this is cocaine base. They didn't say they were going to prove it's an isomer. Why does your client have any standing to—

MR. SHELLOW: That's the standing question.

THE COURT: Do you agree that the state expects or you expect the state to be able to prove that this is cocaine base and not rely on some isomer theory to get to the jury?

MR. SHELLOW: The state says that it will prove that this is cocaine base and is not one of either the other seven isomers or either 1300 regular isomers.

THE COURT: Do you intend to argue at trial that the state hasn't proved that, that their expert might have just established that it's one of the isomers?

MR. SHELLOW: Not only will I do it, if the state takes that position, I'll prove it out of the mouth of the first chemist the state calls.

The State, however, has taken apparently inconsistent positions before the trial court and on appeal. Before the trial court the prosecutor stated, "The state's required to prove the substance in this particular case is cocaine base and we can do that. I'm not talking about anything other than cocaine base." On appeal, however, the State writes that "it is premature in the present case to require the state to prove that the substances in question are $l$-cocaine base as opposed to some other isomer of cocaine base." Is it premature? Perhaps, but the very authorities on which the State relies suggest that, quite possibly, the time is ripe.

273

In *United States v. Puglisi*, 790 F.2d 240, 242 (2d Cir.) (per curiam), *cert. denied*, 479 U.S. 827 (1986), the court noted:

> "Although the government has the burden . . . of proving every element of the offense charged, it has no burden of proving that a term used in its commonly understood sense has no other possible meaning—at least *until the possibility of another meaning is raised by the defense.*"

*Id.* at 242 (ellipses in *Puglisi*; emphasis added; quoting *United States v. Francesco*, 725 F.2d 817, 821 (1st Cir. 1984)). Here, the defense has raised the possibility of another meaning.

Similarly, in *Best v. State*, 556 A.2d 701 (Md. Ct. Spec. App. 1989), another case quoted at length by the State, the court stated:

> When all of our experience shows that the cocaine recovered from drug traffickers is the natural derivative of the coca leaf, there arises a . . . presumption that any substance shown by normal testing to be cocaine is that natural derivative. The burden of production is cast upon the party raising the remote and exotic possibility to generate a genuine jury issue in that regard. *If and when that is done, the presumption is dissipated—the bubble bursts—and the burden is rightfully cast upon the prosecution to negate such a possibility.*

*Id.* at 719 (emphasis added). The *Best* court went on to hold "that to generate a genuine jury issue in this regard does not mean simply raising the theoretical possibility of such a substance. It requires *some evidence that the nontraditional isomer is actually present in a given case." Id.* (emphasis added).

274

Does that mean, as the State argues on appeal, that "[u]ntil and unless" Lee and Casey claim "that they believe the substances at issue in their cases are any *specific* isomer or isomers of cocaine base that should not be controlled substances," they lack standing? Or is Lee and Casey's trial court argument that they would expose the State's failure to prove that the substance was "not one of either the other seven isomer or either 1300 regular isomers" a sufficient representation raising more than a theoretical possibility? The authorities are unclear and the majority, with apparently flippant dispatch, merely comments, "Anyone charged with possessing or delivering an isomer that is harmless can challenge the statute at that time." Majority op. at 271 n.7. That misses the issue and evades the cogent arguments presented by Lee and Casey, and by the State.

I recognize that Lee and Casey's isomer theory of defense may not be a theory that courts will accept. *See Best*, 556 A.2d at 717-719. In the cross-appeal of this case, however, the State has not pursued that argument. Thus, in this case we must consider not whether such a theory of defense is potentially viable as a matter of law, but rather, whether a defendant has standing to challenge a theory of prosecution that precludes that theory of defense.

Although Lee and Casey have offered powerful arguments to support their standing to challenge the potential preclusion of their theory of defense, the issue may be moot because the State, in the trial court, conceded that it is "required to prove the substance in this particular case is cocaine base." If, however, the State is not bound by that position and instead seeks to pursue a different strategy, then Lee and Casey would have standing to challenge a theory of prosecution that

would preclude their theory of defense. Because the majority has failed to accurately identify or address the standing issue, I respectfully dissent on the cross-appeal.