EL PUEBLO DE PUERTO RICO, apelado, *v.* RAÚL GALINDO GONZÁLEZ, acusado y apelante.

*Número:* CR-88-64 *Resuelto:* 17 de diciembre de 1991

628

630

*Ana L. Vega Morales, Carmen Ana Rodríguez Maldonado* y *Cándida Valdespino Zapata*, abogadas del apelante; *Raúl Galindo González, pro se; Jorge E. Pérez Díaz, Procurador General, Norma Cotti Cruz, Subprocuradora General,* y *Marjorie Rivera Rodríguez, Procuradora General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

El apelante Raúl Galindo González acude ante nos para que revoquemos el veredicto de culpabilidad emitido por un Jurado por violación al Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401. En su apelación aduce que el Tribunal Superior, Sala de Aibonito (Hon. Luis A. Juan, Juez) se equivocó al permitir que en el contrainterrogatorio del acusado el Fiscal hiciera preguntas sobre una convicción anterior por posesión de marihuana con el propósito de impugnar su credibilidad. Revocamos.

I

El 3 de diciembre de 1987 a las 5:15 de la tarde, los agentes Jorge Rivera, José Matos y Jorge L. Rivera, en unión al también agente Ángel M. Zambrana Torres, se encontraban dando una ronda preventiva por el pueblo de Comerío en un vehículo no rotulado. Al llegar a un área cercana a la plaza, se estacionaron frente a la Alcaldía, se bajaron del vehículo y se dirigieron hacia unas escalinatas que conducían a la referida plaza.

El agente Zambrana pudo observar que había una persona bastante gorda fumando un cigarrillo que aparentaba ser de marihuana y que, supuestamente, Galindo, a quien alegó conocer desde antes, hacía entrega a otra persona de

una envoltura a manera de cono de las que se usan regularmente para envolver picadura de marihuana.

Al percatarse los transeúntes de la presencia de los agentes, se formó un "corre y corre" y, alegadamente, Galindo y otra de las personas arrojaron los conos hacia la jardinera de la plaza. Los agentes inmediatamente corrieron detrás de las personas y Zambrana permaneció en el lugar para ocupar las envolturas. Inmediatamente después, se reincorporó al grupo de agentes para continuar la persecución.

El agente Matos arrestó a la persona a quien Galindo supuestamente le había entregado los conos, y el agente Rivera arrestó al que estaba fumando marihuana. Alegadamente, Galindo ya había sacado demasiada ventaja para poder ser alcanzado.

Los agentes procedieron a llevar a los arrestados hasta el Cuartel de la Policía de Comerío y reanudaron después la búsqueda de Galindo por el pueblo. Alrededor de quince (15) minutos después, llegaron al sector "El Veintiséis", en la carretera que conduce de Comerío a Bayamón y, allí, pudieron observar que Galindo venía corriendo en dirección hacia el pueblo con la misma vestimenta que alegadamente tenía puesta en la plaza.[1] Los agentes se detuvieron, Zambrana se desmontó del vehículo y le informó al apelante que estaba bajo arresto. De camino hacia la división de drogas de Caguas, se detuvieron en el Cuartel de la Policía de Cidra donde recibieron órdenes de radicar la acusación y citar el caso.

El Sr. Raúl Galindo González fue acusado por violar el Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, *supra*, en grado de reincidencia. Oportunamente, la defensa admitió la reincidencia para que se eliminara de la

---

[1] Cabe señalar que de los autos se desprende que el arresto se efectuó a las 5:15 P.M., o sea, exactamente a la misma hora en que se alega ocurrieron los hechos en la plaza.

acusación y no llegara a conocimiento del Jurado. El tribunal acogió esta petición y ordenó la presentación de una acusación enmendada.

El día del juicio, Galindo optó por renunciar a su derecho constitucional a no declarar y compareció a testificar en su defensa. En el interrogatorio directo declaró que mientras se dirigía de su residencia hacia la biblioteca del pueblo de Comerío, a la altura del sector conocido como "El Veintiséis", fue interceptado por cinco (5) individuos que se transportaban en un vehículo color blanco. Estos individuos, quienes se identificaron como policías, se bajaron del vehículo portando armas largas y revólveres, lo arrestaron, lo trasladaron al Cuartel de la Policía en Comerío y lo encerraron en una celda junto a dos (2) personas que ya se hallaban en ella.[2] Testificó, además, que desde el lugar donde fue arrestado hasta la plaza del pueblo de Comerío, donde supuestamente ocurrieron los hechos que se le imputan, hay una distancia aproximada de tres (3) kilómetros.[3] En el interrogatorio directo no se ofreció prueba que versara sobre el conocimiento del apelante en materia de sustancias controladas.

[2] Por ser prueba de referencia, no se le permitió declarar sobre lo que dijeron las dos (2) personas que se encontraban en la celda junto al acusado.

[3] Intentó declarar además que no estuvo en el lugar donde ocurrieron los hechos delictivos, así como que no tuvo nada que ver con los mismos. El Ministerio Fiscal objetó dicho testimonio por entender que se trataba de prueba de coartada y que dicha defensa no fue notificada por el acusado según lo disponen las Reglas de Procedimiento Criminal. El foro de instancia acogió dicho argumento e instruyó al Jurado para que no tomara en consideración estas expresiones. La defensa intentó refutar los argumentos del Fiscal sin éxito alguno. Ante nos sostiene que el Tribunal Superior erró al prohibirle al apelante declarar que no estuvo en el lugar de los hechos. En vista de nuestra determinación referente a la admisibilidad de convicciones anteriores, no es necesario pronunciarnos sobre este error.

[3] Intentó declarar, además, que no estuvo en el lugar donde ocurrieron los hechos delictivos, así como que no tuvo nada que ver con los mismos. El Ministerio Fiscal objetó dicho testimonio por entender que se trataba de prueba de coartada y que dicha defensa no fue notificada por el acusado según lo disponen las Reglas de Procedimiento Criminal. El foro de instancia acogió dicho argumento e instruyó al Jurado para que no tomara en consideración estas expresiones. La defensa intentó refutar los argumentos del Fiscal sin éxito alguno. Ante nos sostiene que el Tribunal Superior erró al prohibirle al apelante declarar que no estuvo en el lugar de los hechos. En vista de nuestra determinación referente a la admisibilidad de convicciones anteriores, no es necesario pronunciarnos sobre este error.

Al iniciar su turno de contrainterrogatorio y en presencia del Jurado, el Fiscal le mostró a Galindo cinco (5) envolturas blancas a manera de cono, cogidas con una presilla, las cuales contenían la picadura de marihuana incautada. A preguntas del Fiscal, Galindo indicó que no sabía lo que era marihuana y que era la primera vez que la veía. Debido a esto, el Fiscal le hizo admitir que había sido convicto el 1ro de julio de 1980 por posesión de marihuana. Oportunamente, la defensa objetó esta pregunta a base de la Regla 46 de Evidencia, 32 L.P.R.A. Ap. IV, pero el tribunal declaró sin lugar su objeción. Posteriormente, a preguntas del Fiscal, el acusado apelante aclaró que había interpretado mal la pregunta inicial que éste le hizo. Señaló que entendió que el Fiscal le había preguntado si había visto anteriormente la marihuana que le estaba mostrando en ese momento, y que sus expresiones fueron hechas específicamente con relación a lo mostrado por el Fiscal.

A raíz del comentario, el Fiscal hizo referencia a la convicción anterior en cinco (5) ocasiones adicionales. En particular, a pesar de la objeción de la defensa y en presencia del Jurado, el Fiscal le preguntó si estaba solo o con otras personas cuando cometió el delito anterior y si el delito había sido cometido en la plaza de Comerío. El tribunal únicamente excluyó la pregunta sobre si el delito previo fue cometido en la misma plaza.

Finalmente, el Jurado emitió un veredicto de culpabilidad contra Galindo y éste fue sentenciado en grado de reincidencia a treinta (30) años de presidio. Galindo apeló la sentencia, señalando varios errores. En particular, expone que su convicción se logró mediante la revelación al Jurado de la convicción anterior por violar la Ley de Sustancias Controladas de Puerto Rico.

## II

En su escrito de apelación, Galindo sostiene que el tribunal de instancia cometió un grave error al permitir que el Ministerio Público lo contrainterrogara sobre los hechos de la convicción previa. Aduce que esto tuvo "un efecto perjudicial en la deliberación del Jurado afectando su imparcialidad al juzgar los hechos del caso de autos en base [sic] a penalizar al acusado por los hechos de otro caso de posesión de marihuana en 1980". Alegato de apelante, pág. 28. En particular, sostiene que esta decisión es contraria a la Regla 46(A) y (B) de Evidencia, 32 L.P.R.A. Ap. IV, y nuestros pronunciamientos en *Pueblo v. Álvarez Rosario*, 108 D.P.R. 112 (1978).

Al examinar este señalamiento tenemos presente que "junto a la prueba de referencia y a la prueba de carácter, no ha[y] cuestión más estudiada en el Derecho de la prueba que el problema de la impugnación de la credibilidad de un testigo mediante la evidencia de convicción previa. A la vez, no existe quizás asunto cuyas soluciones sean más discutidas". *Primer examen de las Reglas de Evidencia de 1979: comentarios y recomendaciones*, Secretariado de la Conferencia Judicial, Décimotercera Sesión Plenaria, diciembre de 1986, pág. 255. Procede, entonces, que examinemos el derecho probatorio aplicable, particularmente las disposiciones de la Regla 46 de Evidencia, *supra*, y la doctrina de la impugnación por contradicción.

A. *Impugnación general de la credibilidad de un testigo mediante la Regla 46 de Evidencia*

Después de un análisis extenso sobre la utilización de las convicciones previas para atacar en forma general la credibilidad de un testigo, la Asamblea Legislativa rechazó la propuesta de este Tribunal y aprobó en el 1979 la Regla 46 de Evidencia, *supra*. Al adoptar esta regla, la Asamblea

Legislativa se apartó del modelo de la Regla 609 de Evidencia federal y adoptó expresamente la norma establecida en *Pueblo v. Álvarez Rosario*, supra.([4]) La Regla 46 de Evidencia, *supra*, que no ha sido posteriormente enmendada, dispone:

(A) Sujeto a lo establecido en el inciso (B) de esta regla, es admisible, con el propósito de impugnar la credibilidad de un testigo, evidencia de que éste ha sido convicto de delito, si tal convicción es aceptada por el testigo o establecida mediante récord público, *pero únicamente si el delito, independientemente de su clasificación, envuelve deshonestidad o falso testimonio.*

(B) *Es inadmisible contra un acusado, para impugnar su credibilidad, evidencia de convicciones previas a menos que se determine por el juez, en ausencia del jurado, si lo hubiere, que su valor probatorio, considerando todos los hechos y circunstancias del caso, es sustancialmente mayor que su efecto perjudicial.*

(C) No es admisible, con el propósito de impugnar la credibilidad de un testigo, evidencia de convicción previa si dicha convicción es remota. Debe considerarse remota toda convicción que a la fecha del juicio tuviere más de diez (10) años, o si hubieren transcurrido más de diez (10) años de la fecha de excarcelación del testigo de la reclusión impuesta por tal convicción, lo que fuere posterior.

(D) Evidencia de convicción no es admisible bajo esta regla si la convicción ha sido objeto de indulto, perdón, anulación o su equivalente, a base de una determinación de inocencia o rehabilitación. (Énfasis suplido.)

■ Surge de esta regla que, cuando estamos ante un testigo que no es el acusado, sólo serán admisibles para atacar en forma general su credibilidad las convicciones por delitos que impliquen deshonestidad o falso testimonio, independientemente de que sean graves o menos graves. Al interpretar la Regla 46 de Evidencia, *supra*, y su equivalente federal han surgido diversas teorías sobre los delitos que implican deshonestidad o falso testimonio:

---

([4]) Para una crónica de la aprobación de esta regla, véase E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia,* San Juan, Pubs. J.T.S., 1983, Vol. I, Cap. VI, págs. 210–226.

"Bajo la regla sólo es admisible la evidencia de convicción por delito que, independientemente de su clasificación, envuelva deshonestidad o falso testimonio. ¿Cuáles son esos delitos? Mejor hubiera sido referirse solamente a delitos que envuelvan falso testimonio o falsas declaraciones, o delitos que impliquen mendacidad. La expresión 'deshonestidad' es la que engendra el problema. Pero el principio regulador de pertinencia debe ofrecernos la clave: sólo es admisible evidencia de convicción por delito cuya naturaleza sea pertinente a la credibilidad del sujeto. *Esto implica una interpretación restrictiva del conjunto de delitos amparados por la regla.*" (Énfasis en el original suprimido, énfasis suplido y escolio omitido.) E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1985, Vol. I, Cap. VI, pág. 213.

 Sin embargo, hay unanimidad de criterio respecto a que los delitos que conllevan un elemento de engaño o falsedad están incluidos. También se ha concluido que " '[l]os delitos de fuerza o violencia, delitos sexuales, delitos de tránsito, sustancias controladas, armas, explosivos, deben quedar fuera' ". (Énfasis suprimido.) Chiesa, *op. cit.*, pág. 214. Véanse, además: 3 *Louisell and Mueller, Federal Evidence* Sec. 317, págs. 332–343 (1979); *United States v. Mehrmanesh*, 689 F.2d 822 (9no Cir. 1982); *United States v. Hastings*, 577 F.2d 38 (8vo Cir. 1978); *United States v. Thompson*, 559 F.2d 552 (9no Cir. 1977); *United States v. Millings*, 535 F.2d 121 (Cir. D.C. 1976).

 Cuando el testigo es el acusado que declara en su defensa, la regla dispone unas "protecciones especiales con miras a que el acusado no sea juzgado por la convicción anterior sino por los hechos imputados en la acusación o denuncia". Chiesa, *op. cit.*, pág. 211. Por eso, una vez se determina que se está ante un delito que implica deshonestidad o falso testimonio, el tribunal tiene que hacer un balance entre el valor probatorio de la convicción y su efecto perjudicial sobre el acusado. Es decir, que una convicción previa no será admitida *automáticamente* contra un acusado para impugnar su credibilidad general, aunque impli-

que deshonestidad o falso testimonio. Corresponde al tribunal, en ausencia del Jurado, determinar que el valor probatorio de la convicción anterior es "sustancialmente mayor que su efecto perjudicial". Íd., pág. 212.

El propósito de esta medida es evitar el efecto nocivo que puede tener sobre las deliberaciones del Jurado la impugnación general fundamentada en una convicción previa, particularmente cuando se trata de una violación a la misma ley. Del historial legislativo de esta regla se desprende que al aprobarla se reconoció específicamente el peligro de que en casos por jurado "la evidencia de convicción no sólo pese en el ánimo del juzgador a los fines de impugnación de la veracidad del acusado, sino que sirv[a] como elemento importante al momento de determinarse la culpabilidad o inocencia del acusado". 32 L.P.R.A. Ap. IV, R. 46 n. Estudios empíricos convalidan la decisión legislativa al concluir "que el porciento de convicciones fue mayor en los casos en que se admitió prueba de convicciones previas, en comparación con aquellos casos en los que no se hizo referencia alguna a delitos previos del acusado". *Primer examen de las Reglas de Evidencia de 1979: comentarios y recomendaciones, op. cit.*, pág. 258.

En su tratado de derecho probatorio, McCormick describió elocuentemente las consecuencias de la admisión de prueba sobre un delito anterior para cuestionar la credibilidad general de un acusado que declara en su defensa:

> The sharpest and most prejudicial impact of the practice of impeachment by conviction ... is upon one particular type of witness, namely, the accused in a criminal case who elects to take the stand. If the accused is forced to admit that he has a "record" of past convictions, particularly if the convictions are for crimes similar to the one on trial, there is an obvious danger that the jury, despite instructions, will give more heed to the past convictions as evidence that the accused is the kind of man who would commit the crime on charge, or even that he ought to be put away without too much concern with present guilt, than they will to the legitimate bearing of the past convictions

on credibility. The accused, who has a "record" but who thinks he has a defense to the present charge, is thus placed in a grievous dilemma. If he stays off the stand, his silence alone will prompt the jury to believe him guilty. If he elects to testify, his "record" becomes provable to impeach him, and this again is likely to doom his defense. E.W. Cleary, *McCormick On Evidence*, 3ra ed., Minnesota, Ed. West Publishing Co., 1984, Cap. 5, Sec. 43, pág. 99.

■ Para balancear adecuadamente el valor probatorio de la admisión de la convicción frente al efecto perjudicial sobre su credibilidad general, los tribunales federales han desarrollado varios criterios. Weinstein, al considerar el equivalente federal a nuestra Regla 46 de Evidencia, *supra*, los resume de la forma siguiente:

The courts have endorsed resort to a number of factors when balancing under Rule 609(a)(1). The trial court should consider (1) the relationship the crime has to veracity, (2) the recency of the conviction, and (3) the similarity between the past crime and the charged crime. The more similar the two are the more likely it is that admitting evidence of the past crime will prejudice the defendant because the jurors are likely to believe that "if he did it before he probably did so this time."

Even if the trial court finds that evidence of the conviction is probative of truthfulness, it should evaluate (4) the importance of the defendant's testimony, considering the consequences of the defendant being kept from the stand by the fear of having prior convictions divulged. Thus, the court may exclude the conviction if it finds that the defendant's testimony will aid the jury in ascertaining the truth, and refuse to exclude when there is no real need for the defendant's testimony because it would be substantially the same as that of other witnesses. This consideration may, however, be at odds with yet another factor, (5) the centrality of the credibility issue. When the defendant's credibility is the dispositive issue in the case, a court may favor admitting anything, including convictions, that might possibly shed light on whose version should be believed. Weinstein and Berger, *Weinstein's Evidence Manual* Sec. 12.04[03] (1987).

■ Resulta claro, pues, que cuando los tribunales se enfrentan a casos donde el Fiscal ha recurrido a un ataque general a la credibilidad de un acusado mediante conviccio-

nes anteriores que impliquen deshonestidad o falso testimonio, deben ponderar el perjuicio que se pueda causar frente a su valor probatorio para fines de impugnación. Al así hacerlo, se debe tomar en consideración la importancia que tiene para la defensa ofrecer el testimonio del acusado; la importancia que tiene el grado de credibilidad del acusado en la determinación final del caso; la similaridad de la convicción anterior con el delito por el cual se le juzga, y el tiempo transcurrido desde la convicción anterior. Véanse: *Gordon v. United States*, 383 F.2d 936 (Cir. D.C. 1967); *United States v. Mahone*, 537 F.2d 922, *cert.* denegado 429 U.S. 1025 (7mo Cir. 1976).

La similitud entre el delito anterior y aquel por el cual se está juzgando al acusado tiene particular importancia. A mayor similitud entre ambos, mayor será el efecto perjudicial. Cuando el delito por el cual se juzga al acusado y el delito que se usa para impugnar su credibilidad es el mismo, "el balance debiera inclinarse a priori a favor de la exclusión". Véase *Primer examen de las Reglas de Evidencia de 1979: comentarios y recomendaciones, op. cit.*, pág. 267.

Por otro lado, según la Regla 46(C) de Evidencia, 32 L.P.R.A. Ap. IV, no hay que acudir al balance de intereses cuando la convicción anterior tiene más de diez (10) años, pues ésta se considera remota y debe ser excluida automáticamente. Véase E.L. Chiesa, *Evidencia de carácter y conducta específica bajo las Reglas de Evidencia de 1979*, XV (Núm. 2) Rev. Jur. U.I.A. 76 (1980). En los casos en que la convicción tenga menos de diez (10) años, mientras más remota menos será su valor probatorio. Véase *Primer examen de las Reglas de Evidencia de 1979: comentarios y recomendaciones, op. cit.*, pág. 267.

Además de la Regla 46 de Evidencia, *supra*, existe otro medio para impugnar la credibilidad de un testigo: la impugnación por contradicción. Veamos.

## B. *Impugnación por contradicción*

 La impugnación por contradicción se deriva de la Regla 44 de Evidencia, 32 L.P.R.A. Ap. IV. Ésta dispone que:

(A) *Quién puede impugnar.* La credibilidad de un testigo puede ser impugnada por cualquier parte, incluyendo a la parte que llama al testigo.

(B) *Medios de Impugnación.* La credibilidad de un testigo podrá ser impugnada o sostenida mediante cualquier evidencia pertinente al asunto de su credibilidad, es decir, a la veracidad o mendacidad, incluyendo los siguientes' aspectos:

(1) Comportamiento del testigo mientras declara y la forma en que lo hace.

(2) Naturaleza o carácter del testimonio.

(3) Grado de capacidad del testigo para percibir, recordar o comunicar cualquier asunto sobre el cual declara.

(4) Existencia o inexistencia de cualquier prejuicio, interés u otro motivo de parcialidad por parte del testigo.

(5) Manifestaciones anteriores del testigo.

(6) Sujeto a lo dispuesto en el inciso (C) de esta Regla, el carácter o conducta del testigo en cuanto a veracidad o mendacidad.

(C) *Impugnación y autoincriminación.* Un testigo no renuncia al privilegio contra la autoincriminación cuando es examinado en torno a materia que afecta únicamente a cuestiones de credibilidad.

 Según esta regla y nuestra interpretación jurisprudencial, toda prueba pertinente a la veracidad o mendacidad de un testigo es prima facie admisible para evaluar su credibilidad. *Pueblo v. Figueroa Gómez*, 113 D.P.R. 138, 142 (1982). A tenor con este principio, hemos establecido que la enumeración de la Regla 44 de Evidencia, *supra*, es de carácter ejemplarizante y no taxativo. Íd.

 A pesar de no haberse incluido expresamente en esta regla, no cabe duda de que una instancia clásica de impugnación de un testigo es la prueba de contradicción

del testimonio vertido en el juicio.([5]) Véase E.L. Chiesa, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1991, Vol. I, Cap. 6, Sec. 6.3, pág. 296 n. 35. Por tratarse de evidencia que demuestra que lo que ha dicho el testigo en el juicio no es cierto, su pertinencia respecto a la veracidad o mendacidad del resto del testimonio es obvia. McCormick explica este tipo de impugnación de la forma siguiente:

> "Contradiction" may be explained as follows. Statements are elicited from Witness One, who has testified to a material story of an accident, crime, or other matters, to the effect that at the time he witnessed these matters the day was windy and cold and he, the witness, was wearing his green sweater. Let us suppose these latter statements about the day and the sweater to be "disproved". This may happen in several ways. Witness One on direct or cross-examination may acknowledge that he was in error. Or judicial notice may be taken that at the time and place it could not have been cold and windy, e.g., in Tucson in July. But commonly disproof or "contradiction" is attempted by calling Witness Two to testify to the contrary, i.e., that the day was warm and Witness One was in his shirt-sleeves. It is in this latter sense that the term "contradiction" is used .... Cleary, *op. cit.*, pág. 109.

El propósito de la impugnación por contradicción es atacar instancias *específicas* del testimonio del declarante. Es decir, se persigue demostrar, contradiciendo al testigo, que algo de lo vertido en el juicio es falso, inexacto, poco preciso o erróneo. Por otro lado, bajo la Regla 46 de Evidencia, *supra*, el ataque es *general*, dirigido a probar la capacidad del testigo para decir la verdad. Lo que se intenta es advertir o hacer consciente al juzgador de hechos que el testigo es una persona mendaz y que por el solo hecho de haber sido convicto por delitos que implican

---

([5]) Este modo de impugnación tampoco aparece regulado en las reglas federales, por lo que las controversias referentes a este tipo de impugnación se resuelven a base de las Reglas 403 (equivalente a nuestra Regla 19 de Evidencia, 32 L.P.R.A. Ap. IV) y 611 (equivalente a nuestra Regla 43 de Evidencia, 32 L.P.R.A. Ap. IV). 3 *Louisell and Mueller, Federal Evidence* Sec. 318, pág. 343 (1979).

falso testimonio o deshonestidad, su testimonio no es merecedor de crédito. De esta forma, la totalidad del testimonio queda maculada con el potencial de mendacidad del testigo.

En vista de los propósitos distintos que persigue cada regla, la impugnación mediante prueba de una convicción por delito no está subordinada a los requisitos de la Regla 46 de Evidencia, *supra*, cuando su propósito es contradecir específicamente algo de lo declarado por el testigo. Es decir, cuando lo que se persigue es demostrar que lo que el testigo ha dicho es falso, inexacto, poco preciso o erróneo, el delito a utilizarse para contradecir no tiene que implicar deshonestidad o falso testimonio. De esta forma, se evita que un testigo mienta impunemente, sin poder ser contradicho. Bajo una situación como esta, poco importa que la convicción previa no implique deshonestidad o falso testimonio. Lo cardinal es que contradiga lo aseverado por el testigo ante el juzgador de los hechos. Con este propósito, además de la declaración de otro testigo, cualquier evidencia extrínseca será admisible para contradecir lo declarado por el testigo y demostrar que mintió en la silla testifical. M.H. Graham, *Handbook of Federal Evidence*, 2da ed., Minnesota, West Publishing Co., 1986, Sec. 607.2; Cleary, *op. cit.*, págs. 110–113.

Sin embargo, debe quedar claro que la prueba contradictoria sólo puede ser admitida para probar la falsedad de lo dicho por el testigo y en ningún momento para probar una conducta específica en determinado momento. Esto último es materia regulada por la Regla 20 de Evidencia, 32 L.P.R.A. Ap. IV. 1 *Louisell and Mueller, Federal Evidence* Sec. 11, págs. 57–58 (1977). El Fiscal tampoco puede usar el contrainterrogatorio de un testigo de defensa para "abrir la puerta", presentar prueba del carácter y activar la Regla 20(A)(1) y (2) de Evidencia, 32 L.P.R.A. Ap. IV, cuando no se ha hecho referencia al carácter del acusado

en el directo. *Pueblo v. Carrión Rivera*, 111 D.P.R. 825 (1981).

 La prueba contradictoria, claro está, puede ser excluida cuando al amparo de la Regla 19 de Evidencia, 32 L.P.R.A. Ap. IV, "su valor probatorio es de poca significación" en relación con el peligro de causar perjuicio indebido. Chiesa, *Derecho Procesal Penal de Estados Unidos y Puerto Rico, op. cit.*, pág. 296. Como bien expresan Louisell and Mueller en el primer tomo de su tratado de evidencia:

> The trial court may play a most constructive role in such cases. While the trial judge has no duty to save the proponent from his own blunders, it is clearly proper, if events permit, for the trial court to intervene between an improper question by the proponent and the anticipated response, and to hold a conference outside the hearing of the jury to establish reasonable parameters to the proponent's inquiry and the rebuttal evidence which will be allowed in response. Moreover, the trial court may, if the probative value of rebuttal evidence appears to be substantially outweighed by the danger of unfair prejudice or confusion of the issues, exclude or severely limit it pursuant to Rule 403. *Louisell and Mueller*, supra, Vol. 1, pág. 58.

 Es importante aclarar, no obstante, que este tipo de impugnación no puede utilizarse como subterfugio para traer evidencia a todas luces inadmisible bajo otras disposiciones del ordenamiento probatorio: "For example, a prosecutor should not be allowed on cross-examination of the accused to elicit an overbroad denial of past criminality or assertion of past good conduct and then allowed to rebut with otherwise-inadmissible evidence of other criminal acts." *Louisell and Mueller*, supra, Vol., 1, pág. 60. Sobre esto se ha expresado el profesor Chiesa:

> La jurisprudencia ha establecido que no debe usarse esta regla para conseguir que se admita evidencia de otra manera inadmisible. Por ejemplo, una parte quisiera presentar evidencia de que un testigo dijo 'X', pero tal evidencia resulta inadmi-

sible por alguna regla de exclusión. La parte entonces llama a este testigo, que sabe que va a declarar "no X", sólo para impugnarle con evidencia de "X", como manifestación anterior inconsistente. Como se repitió en *United States v. DeLillo*, 620 F.2d 939, 946 (2d Cir. 1980), "impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible." En ese caso se permitió al gobierno impugnar a un testigo de cargo con manifestaciones anteriores inconsistentes, al estimar el tribunal que no se presentó al testigo como subterfugio para introducir la evidencia de las manifestaciones anteriores. (Énfasis suprimido.) Chiesa, *Práctica Procesal Puertorriqueña: Evidencia, op. cit.*, pág. 188.

█ Así mismo, si la prueba de impugnación no tiene un valor probatorio relacionado con la disposición del pleito, independiente de la mera contradicción, se considerará colateral y por lo tanto inadmisible como prueba para contradecir. *Louisell and Mueller*, supra, Vol. 3, pág. 497.

### III

Examinado brevemente el marco doctrinal bajo las reglas de impugnación de la credibilidad de un testigo, procede aplicar esta normativa al caso de autos.

La Sociedad para Asistencia Legal aduce que el Tribunal Superior no debió permitir que el Ministerio Público contrainterrogara a Galindo sobre su convicción anterior por un delito muy similar al delito por el cual se le estaba juzgando en esos momentos. Por su parte, el Procurador General nos invita a que hagamos un análisis más flexible de la Regla 46 de Evidencia, *supra*, de forma tal que pueda admitirse la referida convicción. Entiende el Procurador que la forma más efectiva de impugnar la afirmación de Galindo respecto a que no ha visto marihuana es con una convicción no remota relacionada con esa sustancia, y que hubiese resultado inocuo confrontarlo con una convicción que implicase deshonestidad o falso testimonio. (Admitió el Procurador en su alegato que no la tenía.)

De la exposición narrativa de la prueba se desprende que el Fiscal inició el contrainterrogatorio mostrándole a Galindo unos conos con marihuana y preguntándole si conocía lo que era marihuana. Cuando Galindo contestó que no sabía lo que era marihuana, el Fiscal le preguntó sobre su convicción anterior por posesión de esa sustancia. La defensa oportunamente objetó la pregunta del Fiscal, pero su objeción fue declarada sin lugar. Estas preguntas y las otras referentes a las circunstancias del delito anterior tenían el propósito dual de impugnar la *credibilidad general* de Galindo y probar una *contradicción específica* de tal importancia que pudiera afectar todo su testimonio. En cualquiera de estas vertientes, la prueba era inadmisible.

En primer lugar, de considerarse que esta prueba tenía el efecto de impugnar su credibilidad *en general*, demostrando que Galindo era una persona mendaz, la misma no era admisible bajo los criterios de la Regla 46 de Evidencia, *supra*. La convicción previa fue por posesión de marihuana y dicho delito no incluye elemento alguno que implique deshonestidad o falso testimonio. Por lo tanto, esa convicción no se podía utilizar para impugnar su credibilidad en general.

Sin embargo, aun si consideramos la evidencia de la convicción previa como una prueba de impugnación por contradicción, tampoco procedía admitirla en las circunstancias particulares del caso de autos.

Aunque en su alegato el Procurador General asevera que la prueba de convicción anterior fue utilizada para demostrar que en determinado momento el testigo estaba mintiendo, un análisis independiente de la evidencia en controversia revela que el perjuicio indebido causado por su admisibilidad ameritaba su exclusión. Al analizar el valor probatorio mediante la Regla 19 de Evidencia, *supra*, el balance debió haberse inclinado a favor de la exclusión.

Como norma general, al amparo de la Regla 43(F)

de Evidencia, 32 L.P.R.A. Ap. IV, el contrainterrogatorio de un testigo está limitado por la materia que fue objeto del interrogatorio directo y a cuestiones relativas a la impugnación de credibilidad de testigos. Una lectura de la exposición narrativa de la prueba en el caso de autos revela que el Fiscal no le hizo pregunta alguna a Galindo sobre lo expuesto en el directo. Consciente de que la defensa había estipulado el hecho de que Galindo era reincidente, y a pesar de que en el directo la defensa no hizo preguntas respecto al conocimiento del acusado sobre marihuana, el Ministerio Fiscal dedicó su contrainterrogatorio únicamente a traer ante el Jurado prueba sobre su convicción anterior.

Con estos propósitos, el Fiscal inició su contrainterrogatorio mostrándole los conos incautados y haciéndole una pregunta para indagar sobre su conocimiento de la sustancia que era un elemento principal del delito por el que se le juzgaba. Al formular la pregunta, en forma susceptible de interpretarse equívocamente, el Fiscal podía anticipar razonablemente que se le contestaría en la negativa y que esto le permitiría impugnarle con su convicción previa y luego cuestionarle sobre lo ocurrido anteriormente. Por otro lado, de haber contestado que conocía lo que era marihuana, al enseñarle los conos incautados, el Jurado hubiese inferido su participación en el acto delictivo por el cual se le juzgaba. De lo anterior se desprende que el Fiscal hizo esta pregunta como una excusa dirigida a abrir una brecha para contradecir al testigo con una prueba inaceptable.

De esta manera, logró introducir evidencia que era inadmisible bajo otras disposiciones probatorias e informó al Jurado que el acusado había sido convicto anteriormente por un delito similar a aquel por el cual se le juzgaba. Su actuación menoscabó el derecho del acusado a un juicio justo, fundamentado únicamente en los hechos que origi-

nan la acusación y no en lo que ocurrió anteriormente cuando fue condenado por posesión de marihuana.

Por otro lado, *no olvidemos que en el caso de autos Galindo había admitido la convicción anterior y el tribunal ordenó que se enmendara la acusación para eliminar el carácter reincidente del delito.* Así, al amparo de la Regla 68 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, el Fiscal no podía dejarle saber al Jurado la existencia de la convicción anterior. Sin embargo, *y a pesar de que en el directo no se "abrió la puerta" a esta pregunta,* el Ministerio Público utilizó el contrainterrogatorio para informar al Jurado sobre la convicción anterior. De esta manera trajo ante la consideración del Jurado, so pretexto de impugnar la veracidad del testimonio del acusado, lo que la Regla 68 de Procedimiento Criminal, *supra,* especialmente proscribe al disponer que no se puede dejar saber "al jurado en forma alguna la existencia de dicha convicción o convicciones". Véanse: *Pueblo v. Hernández Pérez,* 94 D.P.R. 616, 621–622 (1967); *Pueblo v. Medina Lugo,* 126 D.P.R. 734 (1990).(6) No podemos permitirle al Fiscal que utilice este subterfugio para lograr una convicción por hechos distintos de aquellos por los que se está juzgando al acusado y que se le vulnere su derecho constitucional a un juicio justo e imparcial.

En vista del carácter y el contenido de la información proyectada al Jurado mediante esta prueba, considerando todas las circunstancias en que fue ofrecida y el efecto perjudicial que de ordinario tiene la prueba de convicciones

---

(6) Tampoco estamos ante una situación a la que le sea aplicable la Regla 20 de Evidencia, 32 L.P.R.A. Ap. IV, como señala la opinión disidente. El propio Procurador General admite que la referencia a la convicción anterior fue hecha con el propósito de impugnar la credibilidad de Galindo y no con el propósito de que se admitiera para fines sustantivos.

La Regla 20 de Evidencia, *supra,* la doctrina de "abrir puertas" y su jurisprudencia interpretativa regulan la utilización de prueba de carácter para propósitos *sustantivos,* o sea, buscan demostrar que el acusado, el día de los hechos, actuó conforme a su carácter. Cuando se trata de *impugnación* de credibilidad, la Regla 20 de Evidencia, *supra,* es claramente inaplicable.

anteriores sobre el Jurado, procede la revocación de la convicción apelada.

Por los fundamentos anteriormente expuestos, *se dictará sentencia revocatoria.*

El Juez Asociado Señor Negrón García emitió una opinión disidente, a la cual se unió el Juez Asociado Señor Rebollo López.

— O —

Opinión disidente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Rebollo López.

Merece recordarse la admonición de Soto Nieto, de que el "Juez no puede limitarse a un 'ir tirando' en su función resolutoria, incorporándose trabajosamente a los asuntos; al contrario, debe comprometer su actuación al resultado de una *meditación seria, honesta, sincera,* para que sus decisiones no se vean sorprendidas por *una fácil improvisación* que dé al traste con ese refinamiento moral que debe ser tónica del buen Juez. Medite, remedite, vuelva a meditar, dé tiempo para que las ideas, los juicios, los sentimientos éticos, vayan posándose en su espíritu y estratificándose según peso y densidad". (Énfasis suplido y escolio omitido.) F. Soto Nieto, *Compromiso de Justicia,* Madrid, Ed. Montecorvo, 1977, Cap. I, pág. 21.

Este pensamiento cristaliza nuestra preocupación en la constante dinámica de adjudicación apelativa. Si bien entre nosotros es necesario el libre fluir de argumentos, más necesario es no desnaturalizar el proceso colegiado y evitar que se convierta en un mecanismo mayoritario, sino de apropiación, de asimilación de ideas. La opinión mayoritaria —propiamente tercera versión— suscrita por el Juez Asociado Señor Hernández Denton, *conceptualiza e incorpora* —por vez *primera*— la diferencia entre *ataque gene-*

*ral* a la credibilidad y ataque a *instancias específicas*. A tal efecto nos dice: "Resulta claro, pues, que cuando los tribunales se enfrentan a casos donde el Fiscal ha recurrido a un ataque *general* a la credibilidad ...." (Énfasis suplido.) Opinión mayoritaria, pág. 640. Introduce la *nueva teoría*, a saber, la Regla 44 de Evidencia, 32 L.P.R.A. Ap. IV (opinión mayoritaria, pág. 642), y señala que el "propósito de la impugnación por contradicción es atacar instancias *específicas* del testimonio del declarante. Es decir, se persigue demostrar, contradiciendo al testigo, que algo de lo vertido en el juicio es falso, inexacto, poco preciso o erróneo". (Énfasis en el original.) Íd., pág. 643. Acto seguido, reconoce lo que hasta *ese momento* habíamos sostenido en nuestro disenso: "Por otro lado, *bajo la Regla 46 de Evidencia, supra, el ataque es general, dirigido a probar la capacidad del testigo para decir la verdad.* Lo que se intenta es advertir o hacer consciente al juzgador de hechos que el testigo es una persona mendaz y que por el solo hecho de haber sido convicto por delitos que implican falso testimonio o deshonestidad, su testimonio no es merecedor de crédito. De esta forma, la *totalidad* del testimonio queda maculada con el potencial de mendacidad del testigo." (Énfasis suplido y en el original.) Íd., págs. 643–644.

Evidentemente la mayoría, en su tercera versión, adopta la crítica hecha a su razón de decidir (*ratio decidendi*); *finalmente nos aceptan que la impugnación dependía de su propósito.*

Cualesquiera dudas al respecto quedan salvadas al continuar así:

En vista de *los propósitos distintos que persigue cada regla, la impugnación mediante prueba de una convicción por delito no está subordinada a los requisitos de la Regla 46 de Evidencia, supra,* cuando su propósito es contradecir *específicamente* algo de lo declarado por el testigo. Es decir, cuando lo que se persigue es demostrar que lo que el testigo ha dicho es falso, inexacto, poco preciso o erróneo, el delito a utilizarse para con-

tradecir no tiene que implicar deshonestidad o falso testimonio. De esta forma, se evita que un testigo mienta impunemente, sin poder ser contradicho. *Bajo una situación como esta, poco importa que la convicción previa no implique deshonestidad o falso testimonio.* Lo cardinal es que contradiga lo aseverado por el testigo ante el juzgador de los hechos. Con este propósito, además de la declaración de otro testigo, cualquier evidencia extrínseca será admisible para contradecir lo declarado por el testigo y demostrar que mintió en la silla testifical. (Énfasis suplido.) Opinión mayoritaria, pág. 644.

Aún después de estas ampliaciones, la opinión mayoritaria sigue siendo *errónea, entorpece la búsqueda de la verdad y dista de hacer cumplida justicia.* Y es que "las Reglas de Evidencia —producto no sólo de la estricta lógica, sino de la experiencia sobre la conducta humana— en nuestro sistema adversativo, *aspiran al descubrimiento de la verdad, evitando sorpresas*". (Énfasis suplido.) *Pueblo v. Figueroa Gómez*, 113 D.P.R. 138, 142–143 (1982).

En buena juridicidad y lógica, el incidente acaecido durante el contrainterrogatorio de Raúl Galindo González —acusado de infringir el Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401— no es susceptible de ser adjudicado bajo el prisma de la opinión mayoritaria. Su solución la gobierna la Regla 20 de Evidencia, 32 L.P.R.A. Ap. IV. Expongamos suscintamente el trasfondo.

## I

El día del juicio —contra la recomendación de su representación legal, Lcda. Ana L. Vega— el acusado Galindo González optó por renunciar a su derecho a no declarar y procedió a testificar en su defensa. De la exposición narrativa de la prueba surge que el examen directo se limitó a lo ocurrido el día del arresto. No aportó en ese momento prueba sobre su carácter.

Durante el contrainterrogatorio, el Ministerio Fiscal le

mostró la marihuana incautada (*Exhibit* 1 del Pueblo) y, refiriéndose a la misma, le preguntó si la había visto anteriormente. Galindo González admite haber entendido así la pregunta al contestar *"que no sabe lo que es marihuana, que es la primera vez que ve marihuana ...".* (Énfasis suplido.) Moción acompañando exposición narrativa de la prueba, pág. 18.

*Ante esa contestación,* el Fiscal inquirió de Galindo González, y éste *admitió* que el 1ro de julio de 1980 había sido convicto de poseer la sustancia controlada conocida por marihuana. Sin éxito, la defensa objetó la pregunta a base de la Regla 46(A) y (B) de Evidencia, 32 L.P.R.A. Ap. IV. A raíz de esa admisión el Fiscal hizo referencia directa e indirecta, en varias ocasiones, a la convicción anterior.

Subsiguientemente, Galindo González fue hallado culpable por un Jurado y sentenciado a cumplir treinta (30) años de prisión (reincidente). Apeló.

## II

De entrada notamos la contradicción en *términos conceptuales* que controla el *ratio decidendi* mayoritario: de un lado, pretenden sostener que las referencias al delito anterior tenían un *propósito general* y, simultáneamente, aducen uno *específico*. Únicamente así se explica el intento de aplicar a los hechos que motivan esta apelación —y delimitar su solución— las Reglas 46 y 44 de Evidencia, *supra.*

Según señaláramos, desde el inicio argumentamos que la Regla 46 de Evidencia, *supra*, era inaplicable. La misma codifica nuestros pronunciamientos en *Pueblo v. Álvarez Rosario,* 108 D.P.R. 112 (1978), e intenta eliminar los vestigios de la inhabilidad para ser testigo por convicción anterior. Persigue, además, controlar el *ataque general a la credibilidad;* de ahí la autorización para admitir delitos que impliquen deshonestidad o falso testimonio. A diferencia de otras reglas, la impugnación a la que se refiere la

Regla 46 de Evidencia, *supra*, pretende desacreditar *todo* el testimonio. Su objetivo es tejer un manto de inverosimilitud sobre todo lo que pueda declarar el testigo.

Y es que adjudicar esta controversia exclusivamente al amparo de la Regla 46 de Evidencia, *supra, como originalmente la mayoría pretendió hacer*, tendría consecuencias funestas *para el objetivo de la búsqueda de la verdad*. El resultado sería *absurdo*. Permitiría, sin remedio probatorio ulterior, que un acusado presente testimonio que lo desasocie de la comisión de cualquier otro delito que no implique deshonestidad o falso testimonio.

Tras estos señalamientos, y en vista de nuestro reparo original, en su última versión, la mayoría tuvo que acudir a la Regla 44 de Evidencia, *supra*. Si bien concurrimos con los señalamientos sobre el carácter ejemplificativo y no taxativo de la Regla 44 de Evidencia, *supra*, el efecto del principio de especialidad exige otro análisis y distinto resultado. Veamos.

La Regla 44(B) de Evidencia, 32 L.P.R.A. Ap. IV, no es más que un mero listado de las maneras de impugnar un testigo. El mismo no es un inventario exhaustivo. Como bien reconoce la opinión mayoritaria, *la contradicción* es *una* de las maneras no enumeradas de impugnar. Por medio de *la contradicción* se ataca una aseveración específica hecha por el testigo. Ahora bien, el *conjunto* de aseveraciones susceptibles de ser impugnadas por *contradicción* es muy amplio, tan amplio que incluye algunas situaciones cubiertas específicamente por *otras* reglas. En su exposición existe una relación de especialidad de tipo universo-elemento entre la impugnación por *contradicción* y otras reglas.

Precisamente esa es la relación entre la *contradicción* y la Regla 20 de Evidencia, *supra*. Si una parte presenta prueba falsa de su carácter, la otra puede presentar evidencia que la contradiga. La razón por la que metodológicamente las reglas dan un trato especial a las instancias

relacionadas con la prueba de carácter es que su uso indiscriminado podría tener consecuencias devastadoras.([1]) Examinemos, pues, con mayor detalle los intersticios de la Regla 20 de Evidencia, *supra*.([2])

## III

Como norma general, esta regla no permite que el Fiscal presente prueba de carácter de un acusado cuando la misma se ofrece para probar que en una ocasión específica actuó conforme a ese carácter. La regla está orientada a evitar que prueba de un rasgo del carácter sea utilizada para demostrar que en una ocasión específica la persona actuó conforme al mismo. Se aspira a que el juzgador analice los hechos en controversia sin que la propensidad del acusado a exhibir cierta conducta afecte su discernimiento. Aunque no se cuestiona la pertinencia que puede tener la prueba de carácter, es preferible evitar los prejuicios que le pueden acompañar. G. Weissenberger, *Federal Evidence*, Cincinnati, Anderson Publishing Co., 1987, Cap. 404, Sec. 404.4, pág. 80. Véase M.F. Kaplan, *Character Testimony*,

---

([1]) Algunos comentaristas opinan que la prueba de actos extrínsecos se excluye por su exceso de valor probatorio, no por falta del mismo. Véase G. Weissenberger, *Federal Evidence*, Cincinnati, Anderson Publishing Co., 1987, Cap. 404, Sec. 404.11, pág. 87, citando a E.W. Cleary, *McCormick on Evidence*, 3ra ed., Minnesota, Ed. West Publishing Co., 1984, Cap. 17, Sec. 190, págs. 557–558.

([2]) En lo pertinente, dispone:

"(A) Evidencia del carácter de una persona o de un rasgo de su carácter no es admisible cuando se ofrece para probar que en una ocasión específica la persona actuó de conformidad con tal carácter, excepto:

"(1) Si la evidencia es ofrecida por un acusado para probar su conducta de conformidad con el carácter o rasgo de éste.

"(2) Si la evidencia es ofrecida por el ministerio fiscal para refutar evidencia aducida por el acusado bajo el inciso (1) anterior.

. . . . . . . . .

"(B) Aunque evidencia de la comisión de otros delitos, daño civil u otros actos no es admisible para probar el carácter de una persona, con miras a demostrar que actuó de conformidad con tal carácter, dicha evidencia es admisible si es pertinente para otros propósitos, tales como prueba de motivo, oportunidad, intención, preparación, plan, conocimiento, identidad o ausencia de error o accidente."

en S.M. Kassin y L.S. Wrightsman, *The Psychology of Evidence and Trial Procedure*, California, Sage Publications, 1985, Cap. 6, pág. 150.

La definición de lo que es prueba de carácter es de particular importancia para la solución del caso de autos. Para el profesor Chiesa es evidencia circunstancial de inocencia que trata de establecer que una persona del carácter del acusado no cometió los hechos delictivos imputados. E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1985, Vol. I, Cap. IV, pág. 69. De igual parecer es Weinstein, al apuntar que "la controversia no es si el acusado es 'bueno', sino si cometió un acto específico, y la evidencia [prueba de carácter] se utiliza circunstancialmente para demostrar que es poco probable que una persona con tal carácter lo haya cometido". (Traducción nuestra.) 2 *Weinstein's Evidence* Sec. 404[05], pág. 404-35 (1993).

Otro comentarista reconoce "dos atributos inherentes al concepto carácter: una connotación de alguna cualidad moral y una insinuación acerca de la manera en que probablemente actuaría un individuo". (Traducción nuestra.) R.B. Kuhns, *The Propensity to Misunderstand the Character of Specific Acts Evidence*, 66 Iowa L. Rev. 777, 794 (1981).

Por vía de excepción, cuando el acusado desfila prueba de su carácter para demostrar que actuó de conformidad al mismo, entonces el Ministerio Público puede presentar prueba de carácter para *refutarla*. Véase Regla 20(A)(1) y (2) de Evidencia, 32 L.P.R.A. Ap. IV. *Pueblo v. Fradera Olmo*, 122 D.P.R. 67 (1988). Esta regla incorpora la doctrina de "abrir puertas". Según la misma, cuando un acusado "abre la puerta" y presenta prueba de su carácter, el Fiscal puede rebatirla presentando prueba contraria a ese extremo. *Pueblo v. Archeval*, 74 D.P.R. 512 (1953); *Pueblo v. Hernández Pérez*, 93 D.P.R. 182 (1966). "[E]l fiscal no sólo pued[e] presentar prueba del '*carácter opuesto*' del

acusado ..., sino aun de actos específicos, *incluyendo convicción por delito*, que tiendan a desmentir o refutar la evidencia de carácter presentada por la defensa." (Énfasis suplido.) Chiesa, *op. cit.*, pág. 70.

Ahora bien, el uso de la Regla 20(A)(1) de Evidencia, *supra*, por parte de un acusado, no significa que pueda haber un derrame indiscriminado de evidencia por parte del Ministerio Fiscal. *Pueblo v. Padilla Arroyo*, 104 D.P.R. 103 (1975). La prueba susceptible de presentarse por el Ministerio Público está limitada por la presentada por el acusado.

Por su parte, la Regla 20(B) de Evidencia, 32 L.P.R.A. Ap. IV —idéntica a la Regla 404(b) de Evidencia federal— mantiene la prohibición *general* de la Regla 20(A) de Evidencia, *supra*, a saber: la exclusión de prueba de actos extrínsecos para demostrar que en un momento específico el acusado cometió un acto similar. Sin embargo, prueba de *otros actos o delitos anteriores es admisible en otras circunstancias*. Comenta Weissenberger:

> Los actos de una persona, incluyendo actos criminales, pueden ser relevantes para otro propósito distinto al de demostrar propensidad de cometer un acto similar. Dichos actos no estarían sujetos al principio de exclusión expresado en la primera oración de la Regla 404 (b).
>
> La lista de bases apropiadas para presentar un acto extrínseco expuesta en la segunda oración de la Regla 404 (b) no es exhaustiva, y la controversia central es si el acto se ofrece sólo para probar propensidad y conducta similar. De ser así, la evidencia es inadmisible por la primera oración de la Regla 404 (b). Además, la segunda oración de la Regla 404 (b) no se debe ver como una lista de excepciones a la Regla, más bien como un catálogo sugestivo, no exhaustivo, de bases que no violan el principio de exclusión de la primera oración de la Regla. La controversia fundamental es una determinación de la relevancia del acto extrínseco, y la regla específicamente autoriza el uso de actos extrínsecos cuando la evidencia se ofrece para probar un hecho relevante distinto al de conducta similar. (Traducción nuestra y escolio omitido.) Weissenberger, *op. cit.*, Sec. 404.13 págs. 88–89.

Así, la Regla 20(B) de Evidencia, *supra*, enumera, a manera de ejemplo, ciertos elementos o defensas en los que la evidencia de actos anteriores se utilizan para probar o impugnar. Tal como lo reconoce dicha regla, su uso no derrota la prohibición general esbozada en la Regla 20(A) de Evidencia, *supra*. No empece la autorización para presentar prueba de delitos anteriores, la admisibilidad está sujeta al escrutinio de la Regla 19 de Evidencia, 32 L.P.R.A. Ap. IV.

## IV

Aunque de ordinario la prueba de carácter se presenta durante el examen directo de un testigo (o el acusado), la Regla 20(A)(1) de Evidencia, *supra, sólo exige que el acusado sea quien inicie su presentación. Para ello no hay momento mágico.* La ley mantiene cerrada la puerta, pero la llave para abrirla —sea en el directo o en el contrainterrogatorio— la posee el acusado si lo considera oportuno y beneficioso a su causa. Véanse: *United States v. Mills,* 704 F.2d 1553 (11mo Cir. 1983) —carácter del acusado generado durante el contrainterroga torio de un testigo de cargo— *United States v. Francesco,* 725 F.2d 817 (1er Cir. 1984).

Lo expuesto no significa que el Fiscal puede "forzar su entrada" durante el contrainterrogatorio. *Pueblo v. Padilla Arroyo,* supra; *Pueblo v. Hernández Pérez,* supra; *Pueblo v. Archeval,* supra. Pero si durante el mismo el acusado *sua sponte* decide abrirla, entonces el Ministerio Público puede entrar y usar la Regla 20(A)(2) de Evidencia, *supra. Y es que sostener que la prueba de carácter sólo puede ser presentada durante el examen directo inmunizaría la misma durante el contrainterrogatorio. Lo que en el directo sufriría un golpe mutilante, campea por un respeto ilegítimo en el contrainterrogatorio.*

En el caso de autos, no hay duda de que al Galindo

González aseverar que "no sabía lo que era marihuana" y que era "la primera vez que la veía", *presentó prueba de un rasgo de su carácter.* Con ello pretendió llevar a la mente de los jurados la impresión de que era un ciudadano cumplidor de la ley. *Intentó engañarlos a base de la poca probabilidad que existe de que una persona que no sabe ni nunca ha visto marihuana, pudiera estar involucrado en los hechos que motivaron su arresto y acusación.* Si bien no tuvo éxito en instancia, aquí lo ha logrado con la mayoría del Tribunal.

Es desafortunado. Al abrir personal y directamente esa puerta del pasado, permitió que el Fiscal presentara prueba justa y precisa en contrario. *El ámbito cubierto no excedió el marco autorizado: una convicción previa, que como tiro certero, destruyó el blanco sin dañar sus alrededores.* Ante la confusión manifestada por la opinión mayoritaria, consideramos prudente *aclarar* que no estamos frente a una instancia en que el Ministerio Público "forzó la puerta". La pregunta del Fiscal se refería al objeto que sostenía en sus manos y que estaba directamente relacionado a los hechos que motivaron la acusación. A preguntas del juez de instancia, Galindo González manifestó *haber entendido que la pregunta se refería a esa marihuana.* Como vemos, la pregunta del Fiscal *no requería que Galindo González presentara prueba de su carácter; bastaba una contestación en la afirmativa o negativa.* Toda vez que la pregunta se refería al objeto en manos del Fiscal, cualesquiera de las contestaciones —sí o no— hubiese mantenido cerrada la puerta e impedido la introducción de prueba sobre convicciones anteriores.

*La contestación de Galindo González fue más allá.* Tuvo el efecto de introducir el elemento "conocimiento" en abono de su defensa.(³) Ante la defensa de "desconocimiento", la

---

(³) El Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401, exige que las prohibiciones allí tipificadas se hagan "a sabiendas o intencionalmente". Según las definiciones del Código Penal, 33 L.P.R.A. sec. 3022(1),

Regla 20(B) de Evidencia, *supra*, específicamente señala que prueba de actos extrínsecos o delitos anteriores *es admisible* para probar el conocimiento. Así lo hizo el Fiscal. Véase *United States v. Eaton*, 808 F.2d 72, 75 (Cir. D.C. 1987) —convicciones anteriores admisibles bajo la Regla 404(b) de Evidencia federal para probar conocimiento cuando el acusado pretende mediante su testimonio desligarse de todo conocimiento de sustancias controladas— *United States v. Reese*, 568 F.2d 1246 (6to Cir. 1977), propiedad hurtada.

Coincidimos con el enfoque expresado en *United States v. Francesco*, supra. Allí, la defensa introdujo la controversia de conocimiento e intención durante el contrainterrogatorio de un testigo de cargo y el informe final. La Corte de Apelaciones de Estados Unidos para el Primer Circuito confirmó al determinar que no medió abuso de discreción al admitir las convicciones anteriores por posesión de cocaína, pues la misma se presentó para probar los elementos de conocimiento e intención. Dijo:

> El acusado alega que el tribunal de instancia abusó de su discreción al admitir evidencia de una convicción anterior por la venta de cocaína. Está establecido que evidencia de una convicción anterior por un delito similar puede ser admitida *para probar conocimiento o intención en la comisión del delito en cuestión*, sujeto, desde luego, a las reglas generales de relevancia y perjuicio. ... Mientras que evidencia de una convicción anterior por un delito similar siempre es perjudicial, frecuentemente el mismo es superado por la relevancia de la evidencia cuando el conocimiento o intención es un elemento en controversia. (Traducción nuestra, citas omitidas y énfasis suplido.) *United States v. Francesco*, supra, pág. 822.

## V

En las peculiares circunstancias del caso de autos, bajo una interpretación racional, lógica y de sentido común,

---

"a sabiendas" implica *conocimiento personal.*

ciertamente la prueba de convicciones anteriores de Galindo González no debió excluirse. En este extremo, *United States v. Beechum*, 582 F.2d 898 (5to Cir. 1978), *en banc* —adoptado en varias jurisdicciones—([4]) no sólo es orientador, sino enteramente aplicable.

*United States v. Beechum*, supra, esboza un análisis bipartita para atender la admisibilidad de prueba de actos extrínsecos. *Primero*, el tribunal debe determinar si el acto extrínseco requiere la misma intención que el delito imputado y si el juzgador de hechos puede creer que el acusado cometió el acto extrínseco. No exige prueba que rebase el *quantum* de duda razonable. Íd., pág. 913. Y *segundo*, el tribunal debe determinar que el valor probatorio de los actos extrínsecos no están " 'substancialmente superados por el peligro de prejuicio injusto' ". Íd.

Aquí se cumple el primer requisito: tanto la convicción anterior como el delito imputado son de la *misma naturaleza* y requieren el mismo grado de intención y conocimiento. No hay duda de que Galindo González, según su propia admisión en sala, cometió el delito anterior.

El análisis del segundo requisito de *United States v. Beechum*, supra, toma en consideración varios factores, a saber: (1) disponibilidad de otra evidencia para demostrar la intención (o conocimiento); (2) similitudes entre el acto extrínseco y el delito imputado; (3) proximidad en tiempo, y (4) momento en que se ofrece la prueba extrínseca.

Nuevamente la evidencia presentada durante el juicio de Galindo González satisface los factores de este segundo requisito. No es susceptible de debate serio negar la *similitud* entre la convicción anterior y el delito imputado. Ambos versan sobre sustancias controladas, específicamente

---

([4]) Citado con aprobación en *Huddleston v. United States*, 485 U.S. 771 (1988). Véanse, también: *United States v. McDowell*, 762 F.2d 1072 (Cir. D.C. 1985); *U.S. v. Dowling*, 855 F.2d 114–122 (3er Cir. 1988); *U.S. v. Huddleston*, 811 F.2d 974–977 (6to Cir. 1987); *United States v. Martin*, 773 F.2d 579 (4to Cir. 1985); *United States v. Edwards*, 696 F.2d 1277 (11mo Cir. 1983).

marihuana. Según los estándares de la Regla 46 de Evidencia, *supra*, la convicción anterior de Galindo González no era remota. Por último, la prueba fue presentada inmediatamente después que Galindo González introdujo el elemento de "desconocimiento". *No nos imaginamos otra prueba de mejor calidad del conocimiento que tenía Galindo González sobre marihuana que las convicciones anteriores, y esto en virtud de su propio testimonio.*

## VI

Finalmente, ¿puede sostenerse de forma legítima la flotante conclusión mayoritaria de que la introducción de la convicción anterior, en las circunstancias específicas de autos, causó perjuicio indebido a Galindo González? ¿Cómo olvidar el principio cardinal de que nuestro ordenamiento evidenciario está orientado —y así debe ser interpretado— para descubrir *la verdad?*

Este proceso resulta un tanto irónico. Galindo González tenía derecho a no testificar; sin embargo lo *renunció.* Tenía igualmente derecho a que no se desfilara prueba sobre sus convicciones anteriores; no obstante, también lo *renunció cuando optó innecesariamente por ampliar su contestación y presentar prueba de su carácter al introducir el elemento "desconocimiento" en abono de su defensa.* ¿Hacemos justicia si también le permitimos *mentir* sin consecuencia ulterior? ¿No estamos ante una absolución injusta?

Frente a estas interrogantes, nos negamos a participar de semejante desvirtualización y desprestigio de nuestro sistema de justicia. Dejamos esa tarea a la mayoría.